## 10238

### CHAPMAN v. WILLIAMS *ET AL.*

#### (100 S. E. 360.)

1. CONTRACTS—COURTS HAVE NO JURISDICTION TO MAKE CONTRACTS.—
It is not the province of the Courts to make contracts for people, but only to enforce their legal contracts.

2. REFORMATION OF INSTRUMENTS—MORTGAGE CANNOT BE REFORMED BY CHANGING NAME OF PARTY.—A note and mortgage cannot be reformed by changing the name of the obligee, where there is no evidence that there was any contract between the parties.

3. REFORMATION OF INSTRUMENTS—NOT GRANTED WHEN FUTILE.—An instrument will not be reformed where it would be futile to do so.

4. TRUSTS—VALIDITY OF MORTGAGE BY TRUSTEE.—Trustees of a fund cannot give a valid mortgage to one having notice of the trust, unless the necessity for the mortgage is absolute and the trustees have the power to execute mortgages.

5. REFORMATION OF INSTRUMENTS—MORTGAGE BY TRUSTEE TO DIVERT CORPUS OF ESTATE INVALID.—A mortgage executed by and in the name of an individual trustee will not be reformed because the *cestui que trust,* a church, had received benefits, the mortgage not being absolutely necessary, being executed by the trustee to divert to current expenses the *corpus,* or a considerable portion of the *corpus,* of the trust estate.

6. RELIGIOUS SOCIETIES—CHURCH NOT ESTOPPED BY CONDUCT OF TRUSTEE IN MORTGAGING PROPERTY.—A church cannot be estopped, even by an unauthorized mortgage by its trustees of land, to deny that the church property was liable therefor, although the proceeds of the mortgage were expended for the benefit of the church.

Before SHIPP, J., Abbeville, Spring term, 1918. Reversed.

Action by Mrs. Belle Chapman against E. W. Williams, in his own right, and as Chairman of Board of Trustees of the Afro-American Presbyterian Church, and the Afro-American Presbyterian Church. Judgment for plaintiff, and the Afro-American Presbyterian Church appeals.

*Mr. J. M. Nickles,* for appellant, cites: *As to the act of the defendant, E. W. Williams, in giving the note and mortgage in question:* 21 L. R. A. (N. S.) 1045-1072 (notes thereunder). *As to the defense of ultra vires:.* Mechem on Agency, 2d Ed., vol. I, sec. 374; Jones on Mortgages, 7th Ed., vol. I, p. 139; 10 Cyc. 1008; 21 S. E. 562; Cook on Corporations, 2d Ed., vol. III, sec. 810; 21 L. R. A. (N. S.), pp. 1047-1048, and notes thereunder; Mechem on Agency, 2d Ed., vol. I, sec. 487; 27 S. C. 134; 10 Rich. 332; 56 S. C. 320; 5 S. C. 565. *As to allowing mortgage to be put in evidence:* 21 S. E. 562. *As to note and mortgage signed by defendant, E. W. Williams, individually, without the seal of the church:* 23 Oregon 511. *As to reformation of note and mortgage:* 44 S. C. 31; Pomeroy's Equity Jurisprudence, sec. 843; 44 S. C. 22; 100 S. C. 157.

*Mr. W. N. Graydon,* for respondent, cites: *As to the defense of ultra vires:* 103 S. C. 494. *As to power of the Court of equity to reform written instruments:* Am. Digest,

Cen. Ed., vol. II, LXII, p. 142; 2d Hill's Chancery, p. 6; 6 Colorado 261; 48 Fed. 808; 14 Ill. 15; 37 N. E. 502; 97 Am. Dec. 232; 9 N. H. 385; 21 S. C. 226; 103 S. C. 494.

July 14, 1919.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The record shows that Rev. E. W. Williams was the president in charge of Ferguson and Williams College, for colored youths, located in the city of Abbeville, S. C. It was deemed for the best interest of all concerned to change the location of the college, and the defendant, Williams, secured an option on the tract of 40 acres of land then owned by the plaintiff-respondent; the purchase price to be $3,000. The defendant, Williams, then went North to raise the money to buy the land. In Washington he met a lady who gave him the $3,000 with which to pay the purchase price of the land to be used for the college. He at once returned to Abbeville and called together the trustees and told them that he had the money to pay for the land; that the college was in need of supplies, but that he had an agreement with Mr. Chapman, the husband of the plaintiff, who was acting as her agent in the sale, by which the deed was to be made upon the payment of $2,500; and that he would arrange for the other $500. The trustees deny that they consented to the withholding of the $500. Be that as it may, the defendant, Williams, deposited the $3,000 in the bank in Washington and gave to Mr. Morse, the treasurer of Ferguson and Williams College, a check for $2,500, and this sum was turned over to the plaintiff, and the plaintiff delivered the deed. The deed as it now appears was to the trustees of the Afro-American Presbyterian Church. The transfer of the property and management from Ferguson and Williams College to the Afro-American Presbyterian Church is not in question. The church popularly known as the "Southern Presbyterian Church" assisted in the management and furnished some trustees who were white men. The defendant, Wil-

liams, gave, not to the grantor, but to her husband, his individual note for $500, and a mortgage of the land conveyed by the plaintiff to the defendant, the Afro-American Presbyterian Church. Mr. Chapman died, and Mrs. Chapman, who was the sole beneficiary, found the note and mortgage among his papers. The note has not been paid. Mrs. Chapman brought this action to reform the note and mortgage, so as to substitute the Afro-American Church as the maker of the note and the mortgage, or in the mortgage in place of E. A. Williams, and to foreclose the same.

The case was tried in the Court of Common Pleas, and a decree was made reforming the note and mortgage and ordering foreclosure. From this decree this appeal is taken, upon several exceptions. The appellant did not treat the exceptions *seriatim,* and we will not.

As this Court views the record, only one question need be considered, and that is: Has the plaintiff made out a case for the reformation of the note and mortgage? The answer to that question is: She has not.

1, 2 The plaintiff has failed to make out her case for two reasons:

(1) It is not the province of the Courts to make contracts for people, but only to enforce their legal contracts.

There is no testimony in the record to show that there was any contract between the grantor or her agent on the one hand, and the Afro-American Presbyterian Church or their trustees on its behalf, that the obligation for the unpaid portion of the purchase money should become the obligation of the Afro-American Presbyterian Church. This would be the making of a new contract, and the Court has no power to do so.

(2) The second reason why the reformation 3 would not be made is that it would be futile to do so.

The donor made this donation for the purchase of the land. The deed was made to trustees, and the obligee had

notice of the trust.   This Court does not say that under no circumstances will it allow trustees to put a mortgage on trust property, but three things must appear: (a) The necessity for the mortgage must be absolute; (b) the trustees must consent to the mortgage; and (c) the trustees must have the power to make the mortgage.

In this case it was convenient to use a part of the trust fund for other purposes, but it was not necessary.   There was no testimony to show that the trustees consented and no testimony to show a power to mortgage.

It is said that the plaintiff is in a Court of equity, a Court of conscience; and it is unconscionable to allow the defendant, church, to use the property of the plaintiff without making full payment therefor.   The contract that the parties made has proven to have been very unwise, but the consequence of a reformation would be disastrous to all trust estates within the jurisdiction of this Court.   No trust estate would be safe if trustees were permitted to incumber trust estates with a mortgage, especially, as here, to divert to current expenses the *corpus* or a considerable portion of the *corpus* of the trust estate.   The effect of a valid mortgage would be to endanger, if not destroy, the entire trust fund of $3,000.   It is the duty of the Courts to preserve, and not to destroy, trust estates.

It is said that the defendant is estopped by conduct in the use of the property and by knowledge by the trustees of the existence of the mortgage.   The defendant, the Afro-American Presbyterian Church, could not be estopped, even by an unauthorized mortgage by its trustees.

For these reasons the judgment appealed from is reversed.

Mr. Chief Justice Gary and Messrs. Justices Hydrick and Watts concur.

Mr. Justice Gage dissents.