## 17790

Beatrice B. MILES, Appellant, v. STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY, Respondent

(120 S. E. (2d) 217)

*Messrs. John A. Martin* and *George F. Coleman,* of Winnsboro, *for Appellant,*

*Messrs. T. K. McDonald,* of Winnsboro, and *Nelson, Mullins & Grier,* of Columbia, *for Respondent,*

May 31, 1961.

LEGGE, Justice.

Plaintiff, insured under defendant's policy against liability for bodily injury caused by the operation of her automobile, brought this action in tort alleging negligence and bad faith on defendant's part in failing to defend, settle, or save her harmless from the claim of her daughter-in-law, a passenger in said automobile, who had been injured while plaintiff was operating it. She appeals, charging that the trial Judge erred: (1) in directing a verdict in favor of the defendant; and (2) in excluding certain proffered testimony.

The policy, limiting the amount of coverage to $5,000.00 for injury to or death of one person and to $10,000.00 for injury to or death of more than one person, excluded from coverage "bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

The accident occurred on December 3, 1958. Two days later the insured signed and delivered to the insured's agent, Mr. Arnette, a report of it on the company's "Automobile Claim Report" form. That report listed as the occupants of the car, other than the insured, Laverne Miles (the insured's daughter-in-law), Ricky and Kenneth Miles (Laverne's children), and Brenda, Cathy and Sandra Miles (children of the insured). It described the accident as having happened about 9:40 p. m. on Pine Needle Road in Columbia, S. C., when the insured drove into a sharp curve unexpectedly at a speed of about forty miles per hour and lost control of the car, which struck a tree and a utility pole on the right side of the road. In the "Personal Injury Report Space" it stated the name and address of the policyholder as "Mrs. Beatrice B. Miles, Old Camden Road, Ridgeway, S. C.", and it listed the names and addresses of the persons injured, other than the insured as follows: Sandra Miles, age 15, Old Camden

Road, Ridgeway, S. C.; Cathy Miles, age 10, Old Camden Road, Ridgeway, S. C.; Laverne Miles, age 23, Old Camden Road, Ridgeway, S. C. It gave the relation of the injured to the insured as "daughters"; and it answered "Yes" the question "Does injured reside in same household as insured?"

Laverne Miles employed an attorney of the bar of Winnsboro in Fairfield County, and on April 17 he wrote to Mr. Arnette, the insurer's agent at Winnsboro, advising of his representation of her. On April 20, the insurer's claims representative called at the home of Mrs. Beatrice B. Miles and obtained from her the following written statement, which she signed:

"I am Mrs. Beatrice B. Miles, white female, age 46, residing on Rt. 2 Old Camden Highway, Ridgeway, S. C. My post office box is No. 24. My phone No. is 2651. I work at Boney's Grocery in Ridgeway, S. C., phone No. 3161. I am a widow and I have three children at home with me now. I have seven children in all.

"On December 3, 1958, about 9:40 p. m., I had an accident while driving my 1953 Ford on Pinestraw Rd., Columbia, S. C. I was going into Columbia from my home. It was not raining. It was dark. The weather was good. I had never traveled that road before. I came upon a sharp curve to my right all of a sudden. I lost control of the steering wheel and ran off the road on the right side. I hit a tree. I was driving. Laverne Miles and Sandra Miles were riding in the front seat with me. There were four children in the back seat. Brenda, Cathy, Ricky and Kenneth Miles were in the back seat. Sandra, age 15, and Brenda, age 12, and Cathy, age 10, all daughters. They all live with me.

"Laverne, age 23, is my daughter-in-law. Ricky, age 5, and Kenneth, age 4, are Laverne's children. Laverne and the children stay in Winnsboro now with her people. They live at Rt. 4, the Great Falls highway. At the time of the wreck, she lived with me. Ricky and Kenneth did also. Laverne married my son, Austin Miles, about 6 or 7 years

ago. They stayed with each other off and on. She has lived in California, Illinois, and Alabama. They are not living together now. She has filed for divorce. Austin came from California about two weeks ago. He is leaving again Friday. He is 24 years old. He and Laverne have two children. In April of 1958 Laverne and the children came to my house to live with me. She came from California and never did go back. She lived with me in my house until January of 1959. She was living with me when this accident happened. She was working in Columbia at the time. She was a waitress. She worked at Doug Broome's too. I went down there every night and brought her home. Sometimes it would be 3:00 a. m. before I would get back home. I spent a lot of money on her and the two children. I did it for the children. While she was with me she would visit her parents in Winnsboro. She stayed about three weeks one time which was about the longest she ever stayed. She never took all her clothes with her. She would change about and swap about. I told her she could stay with me as long as she respected me. It was my son's fault they were not living together. Laverne was raised by a stepmother. They couldn't get along. She slept with me while she was at my house. When she worked she would help buy the groceries. If I had bills come due and I couldn't make it, she would help me. She was real good to me. She never gave me a certain amount. We always cooked and ate together. She got along wonderful with my children.

"She went back to her father's house in January. I carried her to the doctor a few times since then. She would stay with me a few days. I haven't seen her in three weeks. She is supposed to go back to the doctor the 23rd. She was hurt bad in the wreck. She has a *stell* thing in her leg. She has 19 pins in it. As far as I know we still get along all right. I don't know why she left. She left one day while I was gone to work. She took all her things with her. We didn't have any argument or anything. Her children were not hurt in the wreck. They didn't get a scratch, not even a bump.

"The above statement is true according to my knowledge."

By letter dated April 28, the insurer's claims representative acknowledged receipt of notice of Laverne's representation by counsel and advised that on his next trip to Winnsboro he would drop by her attorney's office and discuss the claim with him; but in fact he did not call upon Laverne's attorney until some time after August 15, when he called for the purpose of denying coverage.

In September, 1959, Laverne brought suit against Beatrice, asking damages in the amount of $60,000.00. On October 5, copies of the summons and complaint having been received by the company, its claim superintendent wrote to Beatrice advising that the company had placed the matter in the hands of its attorneys in Columbia, S. C., with instructions to look after the defense, not waiving, but specifically reserving the right to deny coverage, and suggesting that because of that fact and the further fact that the amount demanded was in excess of the protection afforded by the policy, she might procure counsel to represent her personally, at her own expense, in addition to counsel employed by the insurance company. On October 14, 1959, the company's claim superintendent wrote to Beatrice stating that the company had completed its investigation, which had established, among other things, that Laverne, the insured's daughter-in-law, was at the time of the accident a member of the family of the insured residing in the same household, and that her injury was therefore not covered by the policy; that therefore the company would not defend the action brought by Laverne and would not pay any judgment obtained against Beatrice therein; and that she (Beatrice) should take whatever steps she might deem appropriate to defend herself in said action. Copy of this letter was sent to Laverne's attorney, Honorable John A. Martin. On October 20, 1959, he wrote to Beatrice, advising of his receipt of said copy; offering, on behalf of Laverne, to settle her claim for $5,-000.00, subject to acceptance of the offer on or before October 28; and advising that a copy of his letter was being sent to the company's claim superintendent and to the company's

attorneys, Messrs. Nelson, Mullins & Grier, who had previously contacted Mr. Martin with regard to extension of time. On October 27, Messrs. Nelson, Mullins & Grier wrote to Beatrice, returning to her the copy of summons and complaint, and suggesting that she employ her own counsel for defense of the action and arrange at once with Mr. Martin for a reasonable time in which to make her appearance in the case. By letter of the same date to Mr. Martin, Messrs. Nelson, Mullins & Grier advised that they had returned the suit papers to Beatrice and requested that he give her a reasonable time in which to procure representation and file an answer.

Beatrice was given additional time to procure counsel and defend, but she did not do so; and judgment was entered against her, by default, on April 4, 1960, in the amount of $12,500.00.

Laverne then sued State Farm Mutual for $5,000.00 on the policy, as a third party beneficiary thereunder. State Farm, defending, contended that she was within the exclusion clause before mentioned; but the jury resolved that issue against it and rendered a verdict for the plaintiff in the amount of $5,000.00, which State Farm paid.

Beatrice then brought the present action in tort against State Farm, alleging negligence and bad faith on its part in not properly investigating the matter of Laverne's residence and in failing to settle her claim. Damages were sought in the amount of $7,500.00, being the excess of Laverne's judgment over the amount of the coverage, $5,000.00, which State Farm had paid as aforesaid.

> In the defense of an action against its insured, an insurer is bound not only to act in good faith but also to exercise reasonable care. Appleman, Insurance Law and Practice, Vol. 8, Section 4687; *Tyger River Pine Co. v. Maryland Casualty Co.,* 163 S. C. 229, 161 S. E. 491. In such a case unreasonable refusal on its part to accept an offer of compromise settlement has been held to render it

liable in tort to the insured for the amount of the judgment against him in excess of the policy limit. *Tyger River Pine Co. v. Maryland Casualty Co.,* 170 S. C. 286, 170 S. E. 346. But this is not such a case. State Farm never assumed or undertook to control the defense of Laverne's action against Beatrice or to determine whether or not a compromise settlement of Laverne's claim should be made. On the contrary it expressly and unequivocally denied coverage; and the issue here is whether from the record before us, viewed in the light most favorable to the plaintiff's case, it may reasonably be inferred that its denial of coverage was without substantial basis and therefore not in good faith. We agree with the trial judge that the evidence furnishes not the slightest basis for such conclusion.

Appellant's counsel points out that in her testimony in chief Beatrice stated that when respondent's claims representative obtained from her the statement of April 20, 1959, he did not ask her where Laverne got her mail or where she kept her clothes or where she had lived for two weeks before the accident, and that he did not tell her that Laverne's place of residence was a matter of importance. But in our opinion the fact that these specific questions to which her counsel directed her attention at the trial had not been asked by the insurer's agent does not warrant the imputation of bad faith on his part. Under cross examination, Beatrice admitted that her signed statement of April 20, 1959, was factually correct; and she does not suggest that the company's agent, in obtaining it, misled or overreached her in any way. At no time during the trial of the case did she repudiate it, and there is no evidence that she ever advised the company that her statement was incorrect or that the company should investigate further the matter of Laverne's residence.

Laverne's stepmother, Mrs. Branham, testified that on May 16, or 17, 1959, respondent's agents, Mr. Arnette and Mr. Caskey, called at her home on the Great Falls Highway and asked for Laverne; that she told them that Laverne had gone to Alabama; that they asked Mrs. Branham to have

Laverne call Mr. Arnette upon her return; and that they made no inquiry of Mrs. Branham or of her husband, who was present, as to where Laverne had been living before the date of the accident. Laverne testified that when she returned, in June, 1959, she telephoned Mr. Arnette, who told her that if she would get rid of her lawyer her claim could be settled; that in a later telephone conversation he told her that they would do nothing about her claim beyond paying her hospital bills; and that at no time was she asked by Mr. Arnette or any other agent of the company where she had resided immediately prior to the accident. Bad faith, like fraud, connotes dishonesty. It should not be rashly charged or lightly inferred. *State v. Griffin*, 100 S. C. 331, 84 S. E. 876. We agree with the trial judge that this testimony—negative in character with respect to the question of Laverne's residence, and relating to conversations prior to the institution of Laverne's action—, is not reasonably susceptible of the inference of bad faith on the insurer's part in denying coverage.

Respondent had the right, so far as the issue of good faith is concerned, to rely upon the statement given to it by its insured. Had it probed further into the question of Laverne's residence by way of testing the correctness of Beatrice's statement, it might have resolved that question otherwise than it did; but its failure to do so affords, on this record no basis for Beatrice's charge of bad faith. Respondent's conclusion as to Laverne's residence was erroneous; it was so adjudicated in Laverne's action against it; but that determination of the issue of residence has nothing to do with the issue of good faith now before us.

In *Pennsylvania Threshermen & Farmer's Mutual Casualty Ins. Co. v. Robertson*, D. C. M. D. N. C. 1957, 157 F. Supp. 405, 408, the insured was sued by her mother for personal injuries sustained while a guest passenger in the automobile of the insured's husband, which the insured was driving. The insurer, contending that its policy did not afford coverage against damages from her operation of that car,

declined to defend except under a non-waiver agreement, which the insured refused to sign. The insured's mother obtained judgment against her by default in the amount of $43,000.00; and the insurer then brought action against both of them seeking a declaratory judgment of non-coverage. In that action the court, holding that the insured was covered under the "temporary substitute automobile" clause of the policy, went on to say:

"The defendants insist that the insurer, in bad faith, refused to defend, and especially, was negligent in failing to settle the claim against the insured when it had the opportunity to do so for $10,000.00, and that it should now be held liable for the judgment of $43,000.00, in spite of the limitation in the policy of $25,000.00 for one person. The evidence does not support this contention. The insurer, in good faith, though mistakenly, relied on non-coverage. For this reason plaintiff's liability to Mrs. Messer is limited to $25,000.00, with interest from this date and the costs of this action."

In *State Farm Mutual Automobile Ins. Co. v. Skaggs*, 10 Cir., 1957, 251 F. (2d) 356, 359, the policy of automobile liability insurance was issued to one Heltcel. Heltcel's car, covered by the policy, was being driven by Skaggs with Heltcel's permission, and Heltcel was a passenger in it, when an accident occurred resulting in Heltcel's death. Action for wrongful death was brought in the state court against Skaggs. The insurer declined to defend, upon the ground that the death of the insured was excluded from coverage by the terms of the policy. Skaggs employed counsel, who notified the insurer that the plaintiff in the wrongful death action had offered to settle her claim for $10,000.00, the limit of the insurer's liability under the policy, and demanded that the insurer either settle the claim or defend the action. The insurer again refused to defend and refused to settle the claim. The plaintiff obtained judgment against Skaggs for $16,608.00, and thereafter instituted in the federal court a garnishment proceeding against the insurer. In that pro-

ceeding the insurer contended that it was not bound to defend the death action or to pay any judgment therein, for the reason that such "hazard" was specifically excluded by the terms of the policy. The garnishment proceeding resulted in judgment in favor of the insurer, which was reversed on appeal; and on remand the trial court entered judgment in favor of the plaintiff for $10,000.00 plus interest and costs.

Skaggs then brought action in the district court against the insurer, seeking judgment that it was the insurer's duty to satisfy the balance of the judgment against him, $6,608-.00, and to reimburse him for counsel fees incurred by him in his defense of the death action. The trial court entered judgment against the insurer for the amount of the balance due on the state court judgment, $6,608.00, and for $1,000-.00 for counsel fees incurred by Skaggs. On appeal the judgment for $6,608.00 was reversed, the court saying:

"* * * the insurer did not assume the defense of the action brought by Marianne Heltcel. It in nowise undertook to control such defense or to determine whether a compromise of the claim should be made. It denied its duty to defend and denied any liability under the policy. Under the language of the policy there was substantial basis for the insurer's denial of coverage. * * *

"The relation between the insurer and Skaggs was contractual. True, the insurer breached its contract and is liable to Skaggs for the damages caused by such breach, but under the facts here presented there is no rational basis for a finding that the insurer, by refusing to defend the action and denying coverage under the policy, acted in bad faith."

To the same effect is *Fidelity & Casualty Co. of New York v. Gault,* 5 Cir., 1952, 196 F. (2d) 329, 330. There the insurer refused to defend an action by the insured's mother against the insured for injuries sustained while a guest passenger in the insured's automobile, the insurer contending that the policy had been cancelled before the accident for nonpayment of premium. The mother obtained

judgment against her daughter, by default, for $16,200.00. The mother then sued the insurer, as Laverne did here, and the jury, rejecting the defense of cancellation, gave her a verdict for $5,000.00 (apparently the full amount of the policy coverage), which the insurer paid. The insured then sued the insurer for $11,200.00, the excess of the judgment against her over the amount paid by the insurer as aforesaid, alleging negligence, fraud and bad faith on the part of the insurer in failing to investigate and defend; and in that action the insured obtained judgment for the amount so claimed. On appeal the judgment was reversed, the court finding, as the trial judge found in the case at bar, that although the insurer had breached its contract there was no evidence of bad faith on its part, and pointing out further, in language applicable here, that "the evidence shows a total failure of the appellee to defend the suit brought against her by her mother, or to attempt to reduce her damages in any particular, after knowing positively that the insurer absolutely refused to assume any responsibility in connection with the matter."

We find no merit in appellant's contention that the trial judge erred in excluding testimony as to the seriousness of Laverne's injuries. The issue on trial was whether or not the respondent had acted in bad faith toward Beatrice in declining coverage. Proof of the extent of Laverne's injuries was altogether outside of that issue.

The court reporter who had taken the testimony at the trial of Laverne's action against respondent was offered by appellant as a witness to prove that Mr. Caskey, respondent's agent, had testified in that trial that the purpose of his visit to the home of Laverne's stepmother on May 16 or 17, 1959, was to talk to Laverne "and get her idea about where her residence was, or where she lived." The trial judge ruled this testimony incompetent because Mr. Caskey was present in court and available to be called to the stand. Appellant charges that this ruling was erroneous; but we need not decide that question. If it was, it affords no ground for re-

versal in view of the uncontradicted testimony of Laverne's stepmother that on the occasion of Mr. Caskey's visit Laverne was away.

In the course of her examination in chief, Beatrice testified that for two weeks before the accident Laverne had been living with her stepmother, and that she (Beatrice) had sent for Laverne on the day of the accident to come and spend that night with her. The witness admittedly having not so stated to respondent's agent, this testimony was clearly irrelevant, and the trial judge properly directed the jury to disregard it, but permitted the witness to testify to what she did tell the agent and to what he asked and did not ask her. We find no error in this ruling.

Finally, appellant charges "that the court erred in excluding testimony of the witness Laverne Miles relating to whether or not Mr. Arnette, an agent of the defendant, asked her any questions relating to her residence." The record before us shows no such exclusion; the contrary appears from the transcript of the testimony of this witness, as follows:

On direct examination:

"By Mr. Martin:

Q. I ask you this, Mrs. Miles: Did Mr. Arnette ask you anything relative to your residence or where you lived prior to the wreck while he was talking to you on the telephone? A. No, sir.

Q. At no time since or before the wreck has anybody asked you that question other than myself, is that correct? A. That is right."

And upon her recall to the stand:

"Q. Prior to your consulting a lawyer did any agent or anyone from State Farm Mutual Insurance Company see you and talk to you about your injuries? A. No, sir.

Q. Was any question asked you concerning where you lived prior to the accident? A. No, sir."

Affirmed.

TAYLOR, C. J., and OXNER, MOSS and LEWIS, JJ., concur.