1209

Curtis R. TROTTER, Respondent v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and D. Kim Ledford, Appellants.

(377 S. E. (2d) 343)

Court of Appeals

*William O. Sweeney, III,* and *Monteith P. Todd,* both of Nelson, Mullins, Riley & Scarborough, Columbia, *for appellants.*

*Greg W. Anderson,* of *Anderson, Anderson & Anderson,* Edgefield, and *John C. Bell, Jr.,* of *Bell & Bell,* of Augusta, Ga., and *Thomas H. Pope,* of Newberry, *for respondent.*

*Amici Curiae:*

*Kathryn Williams,* of Greenville, *amicus curiae for South Carolina Trial Lawyers Association.*

*D. Reece Williams* and *J. Kershaw Spong,* Columbia, *amicus curiae, for Independent Ins. Agents of South Carolina, Inc.*

*Kay G. Crowe,* Columbia, *amicus curiae, for South Carolina Defense Trial Attorneys' Ass'n.*

Heard Dec. 15, 1987.

Decided Aug. 8, 1988.

BELL, Judge:

Curtis R. Trotter brought this action against State Farm Mutual Automobile Insurance Company and its agent, D. Kim Ledford, alleging: (1) that they negligently failed to advise him of an exclusion in his motor vehicle insurance policy, (2) that they breached their insurance contract with him, (3) that State Farm negligently failed to settle a lawsuit within the policy limits, (4) that State Farm negligently trained Ledford, and (5) that State Farm had engaged in unfair trade practices. State Farm and Ledford answered with general denials and raised the defense that Trotter was contributorily negligent in failing to read his policy. Before trial, the judge granted State Farm's motion for summary judgment as to the unfair trade practices cause of action. At the close of testimony, State Farm and Ledford made motions for directed verdicts on all causes of action. Trotter dismissed his breach of contract claims with prejudice. The

judge denied the motions for directed verdicts on the remaining causes of action. The jury returned a verdict against State Farm and Ledford for $753,521.33 actual damages. State Farm and Trotter made motions for judgment notwithstanding the verdict and for a new trial, which the court denied. State Farm and Ledford appeal. We reverse.

When reviewing a jury verdict, we are limited to determining if there is any evidence to support it. *Willis v. Floyd Brace Co., Inc.*, 279 S. C. 458, 309 S. E. (2d) 295 (Ct. App. 1983). The evidence and all reasonable inferences arising therefrom must be viewed in the light most favorable to the respondent. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bruce*, 284 S. C. 227, 325 S. E. (2d) 77 (Ct. App. 1985).

Trotter is the sole proprietor of an upholstery business in North Augusta. In the operation of his business, Trotter uses a pick-up truck to collect and deliver his customers' furniture.

In 1975, Trotter contacted Ledford, a State Farm agent, about insuring his vehicles. He chose Ledford because friends had spoken well of him and Ledford's office was only one block from his shop.

When Trotter first met with Ledford, he told him that he wanted "full protection" on his truck. He filled out an application and explained about his business, his employees, and how many miles the truck would be driven. Since the truck was used in Trotter's business, Ledford wrote a commercial policy on Trotter's truck and a personal policy on his other vehicles. The commercial policy included a standard exclusion for any injury to an "employee of the insured arising out of his or her employment."[1]

Ledford neither reviewed the policy with Trotter, told him about the exclusion,[2] discussed other types of insurance, nor asked whether Trotter needed workers' compensation insur-

---

[1] Ordinarily, injuries to an employee, arising out of the course and scope of employment, are covered by workers' compensation insurance. *See* Section 42-1-160, Code of Laws of South Carolina, 1976. To prevent double coverage of these injuries, a commercial vehicle policy will typically exclude them from its coverage.

[2] Trotter concedes, however, that Ledford never told him the policy would cover injuries also covered by workers' compensation insurance.

ance.[3] Ledford did not discuss coverage for employee injuries, because he did not think Trotter's business was eligible for State Farm's business insurance, due to the poor condition of Trotter's building.

Trotter, likewise, neither asked Ledford to assess his insurance needs nor inquired about other types of insurance. He did not communicate a desire for workers' compensation[4] or any other insurance. Their conversation was confined to the procurement of insurance on his vehicles.

Trotter insured his vehicles through Ledford until 1983. He described his relationship with Ledford, between 1975 and 1983, as "ongoing." He testified that during this time he[5] periodically visited Ledford's office to pay premiums, to give notification of a change in vehicles, to discuss insurance, or to conduct other routine business. Normally, he would deal only with Ledford's receptionist, but on two occasions he spoke with Ledford himself. He further testified that, in approximately 1981, Ledford contacted him about increasing his coverage. Acting on Ledford's recommendation, he did so. Trotter admitted, however, that no one insurance agent was ever responsible for all of his insurance needs. Furthermore, there was evidence that Trotter insured other risks through different agencies.

In March, 1983, Trotter and an employee, Charles Brunson, were traveling in Trotter's truck on Highway 25, just north of Edgefield, when Trotter crossed the center line to make a left turn and hit an oncoming truck. Trotter and Brunson were picking up a customer's furniture at the time.

Following the accident, State Farm wrote Trotter a letter denying coverage for Brunson's injuries due to the exclusion.[6] Until he received the letter, Trotter was unaware of the exclusion, as he had not read his policy.

Brunson brought suit against Trotter in the United States District Court for the Southern District of Georgia to recover for his injuries. Brunson's attorney offered to settle

---

[3] Ledford knew or should have known that Trotter had employees.

[4] Trotter knew workers' compensation existed to cover on the job injuries to employees.

[5] Trotter testified, as did his wife, Blondell C. Trotter, that on occasion Blondell was the one who performed these tasks.

[6] State Farm paid the claim for Trotter's injuries.

the claim for the limits of Trotter's policy, $100,000.00. Based on the exclusion, State Farm refused to settle the claim or defend Trotter. Brunson was eventually awarded a judgment against Trotter in the amount of $660,000.00. This amount was reduced by $40,000.00 to reflect amounts already recovered from the other driver's insurance carrier.

## I.

State Farm and Ledford argue that they were under no duty to advise Trotter of the employee exclusion in the policy or to advise him that he needed workers' compensation insurance. For this reason, they maintain the trial judge should have granted their motions for directed verdicts on the cause of action for negligent failure to advise.

Generally, an insurer and its agents owe no duty to advise an insured. *Nowell v. Dawn-Leavitt Agency, Inc.*, 127 Ariz. 48, 617 P. (2d) 1164 (App. 1980). If the agent, nevertheless, undertakes to advise the insured, he must exercise due care in giving advice. *See Riddle-Duckworth, Inc. v. Sullivan*, 253 S. C. 411, 171 S. E. (2d) 486 (1969).

An insurer may assume a duty to advise an insured in one of two ways: (1) he may expressly undertake to advise the insured; or (2) he may impliedly undertake to advise the insured. *See Bicknell, Inc. v. Havlin*, 9 Mass. App. 497, 402 N. E. (2d) 116 (1980); *Precision Castparts Corp. v. Johnson & Higgins of Oregon, Inc.*, 44 Or. App. 739, 607 P. (2d) 763 (1980); *Northern Assurance Co. of Am. v. Stan-Ann Oil Co., Inc.*, 603 S. W. (2d) 218 (Tex. Civ. App. 1979). It is the insured, however, who bears the burden of proving the undertaking. *See Riddle-Duckworth, Inc. v. Sullivan, supra.*

An implied undertaking may be shown if: (1) the agent received consideration beyond a mere payment of the premium, *Nowell v. Dawn-Leavitt Agency, Inc. supra;* (2) the insured made a clear request for advice, *see Precision Castparts Corp. v. Johnson & Higgins of Oregon, Inc., supra;* or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on. *See Nowell v. Dawn-Leavitt Agency, Inc., supra; Northern Assurance Co. of Am. v. Stan-Ann Oil Co., Inc., supra.*

It was incumbent on Trotter to prove Ledford agreed to

advise him about his insurance needs. Courts cannot create contracts for the parties. There must be a clear oral or written agreement for a court to enforce. Trotter may not seek, after the fact, to have a court or jury create an undertaking favorable to him, if the parties themselves did not enter such an agreement. *See Chapman v. Williams*, 112 S. C. 402, 100 S. E. 360 (1919); *Somerset v. Reyner*, 233 S. C. 324, 104 S. E. (2d) 344 (1958); *Texcon, Inc. v. Anderson Aviation, Inc.*, 284 S. C. 307, 326 S. E. (2d) 168 (Ct. App. 1985).

Trotter presented no evidence to show that either State Farm or Ledford expressly undertook to advise him. He testified that he saw several State Farm advertisements which in effect said that State Farm's agents are well trained and highly qualified individuals, who will advise people with respect to their insurance needs. These advertisements, however, do not amount to an express undertaking. Ordinarily, an advertisement is a mere invitation to the public to contact the advertiser and request its services, as opposed to an offer to perform those services. *See, Georgian Co. v. Bloom*, 27 Ga. App. 468, 108 S. E. 813 (1921). State Farm's advertisements were nothing more than invitations to the public.

There was likewise no evidence of an implied undertaking. Trotter did not contend that State Farm or Ledford received any consideration beyond the payment of premiums from which an implied undertaking could arise. Moreover, he produced no evidence to show he made a clear request which would put Ledford on notice that his advice was being sought and relied on. A request for "full coverage," "the best policy," or similar expressions does not place an insurance agent under a duty to determine the insured's full insurance needs, to advise the insured about coverage, or to use his discretion and expertise to determine what coverage the insured should purchase. *See Ethridge v. Assoc. Mut., Inc.*, 160 Ga. App. 687, 288 S. E. (2d) 58 (1981) ("full coverage"); *Nowell v. Dawn-Leavitt Agency, Inc., supra* ("the best policy"). Trotter himself was admittedly aware of workers' compensation insurance before he first went to Ledford. When asked if he had ever purchased workers' compensation coverage from other agents in the past, he replied, "No. I asked about it and I was told I didn't

need it." He conceded that he did not ask Ledford to advise him about worker's compensation:

> Q. ... You never put the questions to Mr. Ledford as to whether or not you needed workmen's compensation coverage, did you?
> A. I didn't feel I needed it.

> \* \* \* \* \* \*

> Q. Well, you relied on what that other person told you and you didn't get the coverage, did you?
> A. Because the other person told me—maybe the other person didn't know what he was doing....

Trotter also failed to prove a course of dealing over an extended period of time which would put a reasonable insurance agent on notice that his advice was being sought and relied on. Trotter's "ongoing relationship" with Ledford consisted of periodic visits to pay premiums, to change vehicles, to discuss insurance,[7] and to conduct routine business. During all but two of his visits, Trotter dealt with Ledford's receptionist, not Ledford. Trotter never approached Ledford about purchasing other types of insurance, but instead continued to maintain other types of insurance through other agents.

Because there is no evidence to prove essential elements of his case, we hold, as a matter of law, that Trotter failed to create an issue of fact for the jury.[8] Therefore, the judge

---

[7] Trotter said he sometimes discussed insurance when he went to Ledford's office. Trotter had the burden of proving these discussions would put a reasonable insurance agent on notice that his advice was being sought. *See Riddle-Duckworth, Inc. v. Sullivan, supra.* Since there is nothing in the record which establishes the substance of these discussions, Trotter failed to carry his burden of proof.

[8] Apparently recognizing his problems of proof, Trotter, at oral argument, asserted this is a "bad advice" case, not a failure to advise case. His assertion is not only unsupported by the evidence, but also raises new matter which he is precluded from arguing on appeal. The statement of the case says Trotter brought a "cause of action against the defendants for ... negligent failure to advise the insured about the exclusion in his policy...." The complaint alleges that State Farm and Ledford, "[n]egligently failed to advise ... [him] that there was ... a gap in the coverage of [his] ... insurance policy," that they negligently failed to advise him that workers' compensation insurance would fill the gap, and that they "[n]egligently

should have granted directed verdicts for State Farm and Ledford on the failure to advise causes of action.

## II.

State Farm also contends that the trial judge erred in ■ failing to grant its motion for directed verdict with respect to Trotter's negligent training cause of action.

To establish a cause of action for negligence a plaintiff must show the concurrence of three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately resulting from the breach of duty. *Brown v. South Carolina Ins. Co.*, 284 S. C. 47, 324 S. E. (2d) 641 (Ct. App. 1984), *cert. dismissed*, 290 S. C. 154, 348 S. E. (2d) 530 (1985). The absence of any one of these elements renders the cause of action insufficient. *South Carolina State Ports Authority v. Booz-Allen & Hamilton*, 289 S. C. 373, 345 S. E. (2d) 324 (1986).

In this case, Trotter has, at the very least, failed to establish the element of proximate causation. Negligence is the proximate cause of an injury when without the negligence the injury could have been avoided. *Willis v. Floyd Brace Co., supra*. If, as a result of negligent training, Ledford either had breached a duty to give advice or had given "bad advice," then a causal link to Trotter's damages might be inferred. Since, however, Ledford did not advise Trotter—and was under no duty to advise on the facts presented—his lack of proper training, if any, was irrelevant. In other words, Ledford's training made no difference one way or the other. The judge ought to have granted the motion for a directed verdict on this cause of action.

---

failed to include in the contract of insurance" a provision covering injuries to employees arising within the scope of their employment. Nothing indicates Trotter asserted the "bad advice" claim at trial. An issue not raised in the circuit court cannot be raised for the first time on appeal. *Cudd v. John Hancock Mut. Life Ins. Co.*, 279 S. C. 263, 310 S. E. (2d) 830 (Ct. App. 1983).

## III.

State Farm finally asserts that the judge should have granted its motion for a directed verdict on Trotter's negligent failure to settle cause of action.

In South Carolina, a liability insurer owes its insured ██ a duty to settle a personal injury claim covered by the policy, if settlement is the reasonable thing to do. *Tyger River Pine Co. v. Maryland Casualty Co.,* 163 S. C. 229, 161 S. E. 491 (1931). If an insurer undertaking the defense of a suit covered by the policy unreasonably refuses or fails to settle within the policy limits, it is liable to the insured for the amount of the judgment against him in excess of the policy limits. *Id.* Of course, the rule does not apply if the personal injury claim is not covered by the policy. *See Miles v. State Farm Mut. Auto. Ins. Co.,* 238 S. C. 374, 120 S. E. (2d) 217 (1961); *Stroup Sheet Metal Works, Inc. v. Aetna Casualty & Surety Co.,* 268 S. C. 203, 232 S. E. (2d) 885 (1977) (insurance company fails to defend at its own peril, but it is obligated to defend only actions involving claims covered by the insuring contract).

Trotter does not argue that Brunson's injuries are ██ covered by his insurance contract with State Farm. In fact, he dismissed his cause of action for breach of contract at the close of the evidence and proceeded on the theory that the policy did *not* cover his liability to Brunson. Having conceded this much, Trotter also conceded a necessary predicate for his negligent failure to settle cause of action. If the policy did not cover injuries to Trotter's employees, State Farm had no duty to settle the case with Brunson. Accordingly, the judge also should have granted the motion for a directed verdict on this cause of action.

In light of our disposition in this matter, we need not address the other issues raised by the appeals. For the reasons stated, the judgment is

Reversed.

SHAW and CURETON, JJ., concur.

## ORDER ON REHEARING

*Per Curiam:*

We granted a rehearing in order to invite the views of amici curiae and to reconsider three points: (1) is this case controlled by the decision in *Riddle-Duckworth, Inc. v. Sullivan*, 253 S. C. 411, 171 S. E. (2d) 486 (1969); (2) is this case controlled by the decision in *Giles v. Lanford and Gibson, Inc.*, 285 S. C. 285, 328 S. E. (2d) 916 (Ct. App. 1985); and (3) in the absence of an express or implied undertaking to render expert advice, does an insurance agent have an affirmative duty at law to advise the insured concerning his insurance risks and coverages.

In order to address these points clearly, we must first focus on the exact claim Trotter advanced at trial.

Trotter contended that he went to State Farm's agent, Ledford, to purchase liability insurance for a truck used in his business. He told Ledford he wanted "full protection" on the truck.[1] Ledford wrote a commercial vehicle policy. The policy contained a standard exclusion for any injury to an "employee of the insured arising out of his or her employment."

Ledford did not tell Trotter the policy contained this exclusion, nor did he advise Trotter that injuries to his employees could be covered by purchasing worker's compensation insurance. Apparently, Trotter did not read the policy, so he was unaware of the exclusion for employee injuries. Trotter testified that when he went to Ledford, he did not wish to purchase worker's compensation insurance, in part because another person had already advised him against it.

At trial, Trotter claimed Ledford was guilty of actionable negligence because he failed to tell Trotter about the exclusion and failed to recommend worker's compensation insurance to cover the risk of employee injuries. He introduced no evidence that Ledford offered him "bad" advice about how to cover his business risks; or that he asked for a policy

---

[1] Ledford categorically denied that Trotter asked for "full protection." For purposes of appellate review, we are bound to accept Trotter's testimony rather than Ledford's.

covering the risk of injury to his employees, which Ledford failed to procure; or that Ledford misrepresented the coverages of the policy by telling him it covered injuries to his employees. While in argument before this Court, Trotter has variously treated his action as if it were for (1) negligent (i.e., "bad") advice, (2) negligent failure to procure insurance coverage, and (3) misrepresentation or fraud. His pleadings and proof establish that the action is for negligent failure to advise. As Trotter cannot argue new and different causes of action for the first time on appeal,[2] we confine our review to the claim for negligent failure to advise.

## I.

The first question is whether this case is controlled by *Riddle-Duckworth, Inc. v. Sullivan*, 253 S. C. 411, 171 S. E. (2d) 486 (1969). We hold it is not.

In *Riddle-Duckworth*, the insured purchased third party liability coverage for his place of business. The building contained an elevator which was used to lift goods and passengers to the second floor. The insurance agent physically inspected the premises, he saw the elevator, and he was informed about the uses made of it. The insured specifically asked the agent to procure a policy which covered the elevator. When the policy was issued, the insured read it and questioned whether it covered the elevator. In response to his specific inquiry about coverage for the elevator, the agent assured him the policy provided full coverage. As it happened, the policy did not cover the elevator, and the insurance company denied the insured's claim when the elevator fell, injuring a third party.

On these facts, the Supreme Court held that the insurance agent was liable for the insured's damages because he negligently failed to procure a policy covering the elevator. The agent had clearly undertaken to procure elevator coverage. This undertaking imposed on him the duty to exercise reasonable care and skill in procuring the correct coverage. Through the agent's neglect, the policy did not provide the

---

[2] *See Rental Uniform Service of Greenville, S. C., Inc. v. K & M Tool & Die, Inc.*, 292 S. C. 571, 357 S. E. (2d) 722 (Ct. App. 1987) (the Court of Appeals will not address a question not raised in and passed on by the trial court).

coverage. As a result, the insured suffered substantial damages for which the agent became liable.

Trotter's case does not involve a failure to procure insurance. By his own admission, he did not go to Ledford to purchase insurance for work related injuries to his employees. He did not ask Ledford for such coverage. Ledford did not agree to procure such coverage. After Trotter received the policy, he did not ask if it covered injuries to his employees. Moreover, Ledford never told him the policy afforded such coverage. These facts readily distinguish Trotter's case from *Riddle-Duckworth*.

## II.

The next question is whether this case is controlled by ■ *Giles v. Lanford and Gibson, Inc.*, 285 S. C. 285, 328 S. E. (2d) 916 (Ct. App. 1985). We hold it is not.

In *Giles*, the insured purchased a partially destroyed house, which he intended to rebuild as his residence. In order to finance the purchase, he sought a mortgage loan from a bank. As a condition of the loan, the bank required him to obtain fire and extended coverage insurance on the house with a loss payable clause naming the bank as payee. The insured went to his insurance agent to obtain the insurance. He explained his situation and requested the agent to write a policy giving him immediate coverage on the house. Instead of writing a homeowner's policy, the agent wrote a "Builder's Risk" policy on the house. When the policy was delivered to the insured, the agent told him the policy covered him for the full face amount. Before the insured began construction on the house, it was totally destroyed by fire. The insurance company denied his claim, because the "Builder's Risk" policy only covered losses after construction began. The insured sued the agent for constructive fraud based on the agent's representation that the house was covered from the date the policy was written.

On the facts stated, this Court held that the agent was liable for the misrepresentation as to coverage. We rejected the argument that the insured had no right to rely on the misrepresentation, noting (1) in view of the agent's superior experience and knowledge regarding different types of insurance, it was reasonable for the insured to assume the truthfulness of any representations the agent made about

the coverage; and (2) the language of the "Builder's Risk" policy was so unintelligible that the insured could not have discovered the falsity of the misrepresentation by reading the policy.

In Trotter's case, Ledford made no misrepresentations regarding the coverages of the policy. Moreover, the policy expressly excluded coverage for injuries to an employee of the insured in language that was intelligible to a person of common experience and understanding. *See Doub v. Weathersby-Breeland Insurance Agency*, 268 S. C. 319, 233 S. E. (2d) 111 (1977) (where there is nothing in the exclusion that is ambiguous or difficult to understand, it is effective notwithstanding insured's claim he would not have understood it if he had read it). Unlike the agent in *Giles*, Ledford gave his insured no reason to believe the policy afforded a coverage which in fact it did not. Thus, Ledford cannot be liable under the holding in *Giles*.

## III.

Finally, we address the contention that an insurance agent has an affirmative duty, apart from any undertaking on his part, to explain all risks and coverages the insured should consider when purchasing a policy of insurance.

Generally, an insured's claim must be based on the terms of the policy as issued. *Carolina Bank & Trust Company v. St. Paul Fire & Marine Company*, 279 S. C. 576, 310 S. E. (2d) 163 (Ct. App. 1983). Only if the insurer or the insurance agent voluntarily assumes a duty to advise the insured, may liability arise for failure to exercise reasonable skill and care in explaining the policy or otherwise counseling the insured. *Id.* Coverage cannot be imposed after the fact simply because the insured claims, in retrospect, that he should have been sold a different policy. *Cf. Crosby v. Protective Life Insurance Company*, 293 S. C. 203, 359 S. E. (2d) (Ct. App. 1987).

At trial, Trotter produced a parade of opinion witnesses who testified that a good insurance agent should explain risks, coverages, and policy exclusions to the insured. They expressed the view that an agent who does not render such advice fails to give proper service to his client.

This opinion testimony could not create a duty to advise which does not exist at law. The judge correctly charged the jury that an insurance agent normally has no duty to advise a customer or to warn him of provisions contained in the insurance policy.[3] The opinion testimony regarding an agent's responsibilities was largely irrelevant and may have confused the jury as to the legal duty of care. In any event, it did not relieve Trotter of the burden of proving a special undertaking by Ledford to render advice.

On rehearing, Trotter asserts there is evidence of an implied undertaking by Ledford to advise him about his insurance coverage.

He cites his own testimony that he asked Ledford for "full protection" and also that on one occasion Ledford advised him to increase his third party liability limits on the truck. While this testimony is in the record, it does not prove an undertaking by Ledford. A request for "full protection" does not place an insurance agent under a duty to advise the insured about coverage or to use his discretion and expertise to determine what coverage the insured should purchase. *Ethridge v. Associated Mutuals, Inc.*, 160 Ga. App. 687, 288 S. E. (2d) 58 (1981). Likewise, an agent's simple recommendation that the insured raise his liability limits upon renewal of the insurance does not amount to a general undertaking to advise the insured about the policy. Neither is it evidence of a course of dealing from which such an undertaking can be implied. This is especially true where, as here, no change of policies or coverages was either made or recommended.

Trotter also cites Ledford's testimony, claiming that Ledford admitted giving him insurance advice.[4] However, a careful reading of the transcript shows that Ledford made no such admission.[5] Thus, Trotter is still faced with a lack of proof as to the undertaking.

---

[3] Trotter did not object to this charge at trial.

[4] Trotter's cause of action, it should again be noted, rests on the claim that Ledford did *not* give him advice, although he was under an alleged duty to do so.

[5] The testimony in question reads as follows:

Q. And to the extent you or your employees gave any advice concerning

For the reasons stated, we adhere to our original opinion in this case. After rehearing the appeal, the Court is unable to discern that any material fact or principle of law has been either overlooked or misapprehended. Accordingly, the stay of remittitur, heretofore in effect, is revoked and the judgment of this Court shall be remitted forthwith to the court of common pleas.

And it is so ordered.

insurance to Mr. Trotter or Mrs. Trotter, you were giving that advice as his or her agent? Is that correct?
A. That's right.
Q. And you, of course, concede that when you give advice, it needs to be good advice. Is that correct?
A. I give the best advice I can about what I'm talking about. Yes.

The line of questions is purely rhetorical or hypothetical. None of Ledford's answers is a statement that he actually gave Trotter advice or was under a duty to do so. Ledford merely agrees with the abstract proposition that an insurance agent who gives advice should give good advice.