**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1036

CRC SCRAP METAL RECYCLING, LLC,

       Plaintiff - Appellant,

    v.

HARTFORD CASUALTY INSURANCE COMPANY; WATSON INSURANCE
AGENCY; HARTFORD FIRE INSURANCE COMPANY,

       Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Spartanburg.  Henry M. Herlong, Jr., Senior
District Judge.  (7:12-cv-00146-HMH)

Submitted:  June 13, 2013        Decided:  June 27, 2013

Before MOTZ, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

John E. Rogers, II, C. Reed Teague, WARD LAW FIRM, PA,
Spartanburg, South Carolina, for Appellant.  Nosizi Ralephata,
John S. Wilkerson, III, TURNER, PADGET, GRAHAM & LANEY, P.A.,
Charleston, South Carolina; Hunter S. Freeman, Susan Taylor
Wall, MCNAIR LAW FIRM, P.A., Greenville, South Carolina, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

CRC Scrap Metal Recycling, LLC appeals from the district court's grant of summary judgment for Hartford Casualty Insurance Company, Hartford Fire Insurance Company, and Watson Insurance Agency (collectively the "Insurers"). We affirm.

I.

CRC first appeals the district court's determination that the Insurers did not have a duty to defend or indemnify CRC against a suit brought by Action Concrete seeking payment for property damage caused by CRC's receipt and sale of Action's stolen aluminum forms. CRC specifically challenges the district court's determination that property damage caused by its alleged negligent conversion of the aluminum forms is not covered under its commercial general liability policy because negligent conversion does not constitute an "occurrence."

South Carolina courts have yet to address whether negligent conversion constitutes an "occurrence." And we need not now decide the issue. For we may affirm on any ground supported by the record. Sloas v. CSX Transp. Inc., 616 F.3d 380, 388 n.5 (4th Cir. 2010). The record in this case demonstrates that even assuming negligent conversion constitutes an "occurrence" under CRC's policy, any property damage caused by that occurrence is excluded under the policy's "your product" exclusion.

2

Under South Carolina law, "[c]ourts interpret insurance policy language in accordance with its plain, ordinary, and popular meaning, except with technical language or where the context requires another meaning." M & M Corp. of S.C. v. Auto-Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010). Ambiguities are construed against the insurer and in favor of coverage. Id.

The policy generally covers "'property damage' . . . caused by an 'occurrence.'" J.A. 822. It excludes from coverage, however, all "property damage to '[CRC's] product,'" that is, property damage to "any goods or products . . . manufactured, sold, handled, distributed, or disposed of by" CRC. JA 839. The underlying complaint alleged property damage to Action's stolen aluminum forms that CRC purchased, handled, and sold. The definition of "your product" unambiguously includes these types of actions. See Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 420 (5th Cir. 1982) (holding that "handled" as used in the "your product" exclusion means "to deal or trade in."). Thus, the aluminum forms, although still owned by Action, constitute CRC's "product" for the purposes of the exclusion, and any property damage caused by CRC's negligent conversion of those forms is excluded from coverage.

CRC also challenges the district court's determination that it failed to offer evidence supporting its claims of negligence and negligent misrepresentation by the Insurers. CRC asserts that summary judgment was inappropriate because it offered evidence that it relied, to its detriment, on the recommendations of Watson's employee as to the "best possible coverage," and accordingly purchased insurance that did not provide coverage for the property damage at issue here. Even assuming that CRC relied on Watson's employee, the district court did not err in granting summary judgment to the Insurers.

First, there is no evidence in the record that the Insurers owed any duty to CRC. "Generally, an insurer and its agents owe no duty to advise an insured," but an insurer that expressly or impliedly undertakes to advise its insured must exercise due care. Trotter v. State Farm Mut. Auto. Ins. Co., 377 S.E.2d 343, 347 (S.C. Ct. App. 1988). "An implied undertaking may be shown if . . . the insured made a clear request for advice." Id. However, an insured's "request for 'full coverage,' 'the best policy,' or similar expressions does not place an [insurer] under a duty to determine the insured's full insurance needs, to advise the insured about coverage, or to use his discretion and expertise to determine what coverage the insured should purchase." Id. In this case, there is no evidence that CRC

4

asked Watson's employee for any advice beyond suggesting the "best and broadest insurance policy." Thus, the Insurers owed no duty to CRC, and CRC's negligence claim fails.

CRC's negligent misrepresentation claim similarly fails because CRC offered no evidence that the Insurers or their employees made any factual misrepresentations regarding coverage afforded by the policy. See deBondt v. Carlton Motorcars, Inc., 536 S.E.2d 399, 405 (S.C. Ct. App. 2000). An insurer's vague puffery that a policy provides the "best and broadest" available coverage does not constitute a factual misrepresentation. Cf. Miller v. Premier Corp., 608 F.2d 973, 981 (4th Cir. 1979).

## III.

We accordingly affirm the district court's grant of summary judgment for the Insurers. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED