1893

CAROLINA PRODUCTION MAINTENANCE, INC., Appellant v. UNITED STATES FIDELITY AND GUARANTY COMPANY and McNeill-Patterson and Associates, Inc., Respondents.

(425 S.E. (2d) 39)

Supreme Court

*Roger L. Couch,* Spartanburg, *for appellant.*

*John E. Johnston, Jr.,* Greenville, and *Charles R. Norris,* Columbia, *for respondents.*

Heard Oct. 5, 1992; Decided Nov. 16, 1992.

Reh. Den. Jan. 12, 1992.

GOOLSBY, Judge:

Carolina Production Maintenance, Inc. (CPM), brought suit against United States Fidelity and Guaranty Company (USF & G) for payment of a loss under its business liability policy and, alternatively, against McNeill-Patterson (McNeill), its insurance agent, for negligence in obtaining the policy if coverage were held not to exist. The trial court granted both USF & G and McNeill summary judgment. CPM appeals. Address-

ing the questions of coverage, negligence, and contributory negligence, we reverse the grant of summary judgment to USF & G but affirm the grant of summary judgment to McNeill.

We first outline the relevant facts. In doing so, we have viewed the evidence reflected in the record in the light most favorable to CPM. *Main v. Corley*, 281 S.C. 525, 316 S.E. (2d) 406 (1984).

CPM assumed a contract with Phillips Driscopipe, Inc., under which CPM was to provide routine maintenance and limited operation of a grinding machine owned by Phillips and located on the premises of Phillips' plant. Phillips would also operate the machine. The contract required CPM to provide employees for the undertaking. These employees, however, would be controlled by Phillips' supervisors while on Phillips' premises.

Because the contract also required CPM to obtain a certificate of insurance, CPM's president, Willie Viverette, contacted Bob Horton of McNeill and explained to Horton what CPM would be doing at Phillips. He also told Horton that CPM needed a $1,000,000 policy. Viverette left to Horton the question of what the policy should contain.

Horton thereafter submitted an "accord" form to USF & G to obtain a classification for CPM's operation and to determine if USF & G would supply the coverage. USF & G later agreed to provide the coverage and issued the policy.

The policy contains the following exclusions:

j. "Property damage" to:

\* \* \* \* \* \*

(4) Personal property in your care, custody or control;

\* \* \* \* \* \*

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

The policy does not define the term "personal property"; however, it does define the term "your work" as:

a. Work or operations performed by you or on your be-

half; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.

Phillips used the grinding machine to grind industrial plastic waste for reuse in its manufacturing process. The contract assumed by CPM required CPM to inspect, remove, and replace certain grinding blades. On June 26, 1989, a CPM employee improperly reinstalled a set of blades in the grinding machine. The blades came loose and caused $41,000 worth of damage to the blades as well as to parts of the grinding machine not covered by the maintenance agreement.

CPM notified McNeill of the accident and McNeill submitted a claim to USF & G. After USF & G interviewed Viverette, USF & G denied coverage based on the "care, custody or control" exclusion of its policy.

This action followed. CPM claimed the policy covered all damaged parts except the blades it changed and, if the policy did not cover those parts, McNeill had negligently failed to obtain proper coverage for CPM.

USF & G and McNeill answered, denying the allegations of CPM's complaint. USF & G also raised defenses based on policy exclusions and McNeill also alleged CPM was contributorily negligent.

USF & G and McNeill later took Viverette's and his wife's depositions. In his deposition, Viverette stated he did not read the policy obtained from USF & G by McNeill for CPM. Viverette's wife, CPM's secretary, testified in her deposition that she did not read the policy either.

Both USF & G and McNeill moved for summary judgment.

The trial court granted USF & G summary judgment based on the ground that, because the grinding machine "was a necessary part of [CPM's] work" and fell within CPM's "care, custody or control," exclusion j(4) excluded coverage of the property damage in question. It also based the grant of summary judgment to USF & G on the ground that exclusion j(6), the "particular part" exclusion, applied to exclude coverage for the entire grinding machine and not just for the blades.

The trial court granted McNeill summary judgment on the ground that McNeill was not negligent because the care, custody or control exclusion contained in the USF & G policy was standard and McNeill could not have obtained a policy without the exclusion. The trial court also based its decision on its finding that CPM was contributorily negligent as a matter of law in failing to read the policy.

## I.

In this case, there is no real dispute as to the actual events leading up to the loss. There are, however, significant and material differences as to what the facts mean and whether those facts place the occurrence within either or both of the policy exclusions; hence, the grant of summary judgment to USF & G was improper. "Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusion to be drawn from those facts." *Baugus v. Wessinger*, 303 S.C. 412, 415, 401 S.E. (2d) 169, 171 (1991).

CPM alleges the grinding machine was not within its "care, custody or control," but rather was within the care, custody and control of Phillips.

We think there is a genuine issue of material fact concerning whether the grinding machine was indeed under the "care, custody or control" of CPM. *See Gibson v. Glens Falls Ins. Co.*, 241 S.C. 293, 128 S.E. (2d) 157 (1962) (a swimming pool at a private residence was not under the "care, custody or control" of a contractor whose employees left the pool to drain overnight; therefore, the contractor's insurer improperly denied coverage for damages sustained when the pool shifted out of its foundation because of hydrostatic pressure while it was draining); *Royal Indemnity Co. v. T.B. Smith*, 121 Ga. App. 272; 173 S.E. (2d) 738 (1970) (where a contractor was hired to paint the exterior of a steel tank and the interior radial sweeper arm was damaged when a catwalk was moved in the wrong direction, there was not sufficient care, custody or control of the damaged item to warrant exclusion).

As the South Carolina Supreme Court noted in *Gibson*, the application of "care, custody or control" exclusions is "dependent largely upon the facts and circumstances of each case."

*Gibson*, 241 S.C. at 298, 128 S.E. (2d) at 159. We mentioned above that Phillips was also to operate the grinding machine and Phillips' supervisors were to control CPM's employees while they were on its premises.

■ We also find there is a genuine issue of material fact as to whether this occurrence came within the "particular part" exclusion of j(6).

CPM asserts the "particular part[s]" which must be repaired because "[its] work" was "incorrectly performed on [them]" are the blades; therefore, it urges, only the blades are excluded under the policy and not the entire grinding machine.

This court has addressed the coverage of policies with similar provisions in the past. *Engineered Products, Inc. v. Aetna Casualty & Surety Co.*, 295 S.C. 375, 368 S.E. (2d) 674 (Ct. App. 1988), involved a "particular part" exclusion very similar to the one in this case. Engineered Products was hired to design, fabricate, and install a high-rise rack storage system for Eaton-Kenway. Engineered Products subcontracted out the installation of the system. When the entire system collapsed, Aetna refused to defend Engineered Products in a suit brought by Eaton-Kenway's subrogee. Aetna claimed the damage was not covered because of the "particular part" exclusion. Engineered Products alleged the "particular part" was the installation of the system rather than the system itself. The trial court granted summary judgment to Aetna and we affirmed. That case is distinguishable from this case, however, in that the insured was responsible for the entire system from design to installation.

Here, on the other hand, the evidence, when viewed in the light most favorable to CPM, reasonably suggests that CPM was responsible for only certain parts of the grinding machine and not for the entire thing.

We therefore reverse the grant of summary judgment to USF & G.

## II.

■ CPM contends the trial court erred in finding that McNeill was not negligent in procuring the USF & G policy and that CPM was contributorily negligent as a matter of law. We disagree and affirm the trial court's grant of summary judgment to McNeill.

The trial court's conclusion that the "care, custody or control" exclusion was standard and that CPM could not have obtained a policy without the exclusion was buttressed by CPM's admission that, after USF & G denied its claim on the basis of the "care, custody or control" exclusion, CPM obtained a new policy with the very same exclusion from a different company.

We are not persuaded by CPM's argument that the trial court erred in failing to apply the test for assumption of a special duty by an insurance agent as outlined in *Trotter v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 465, 377 S.E. (2d) 343 (Ct. App. 1988).

Insurers and their agents generally do not have a duty to advise an insured. *Id.* at 471, 377 S.E. (2d) at 347. "If the agent, nevertheless, undertakes to advise the insured, he must exercise due care in giving advice." *Id.* Such a duty may be assumed either expressly or impliedly. *Id.*

An implied undertaking may be shown if: (1) the agent received consideration beyond a mere payment of the premium, . . . (2) the insured made a clear request for advice, . . . . or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.

*Id.*

No allegation in the complaint and no facts in the record support a claim that McNeill undertook a special duty under *Trotter* with regard to obtaining the policy for CPM.

The trial court, therefore, committed no error in finding that McNeill was not negligent in obtaining the insurance policy for CPM from USF & G.

We also agree with the trial court's conclusion that, even if McNeill were negligent, CPM was contributorily negligent in that its president and secretary admittedly did not read the policy despite the fact that it had been in effect for over a year. *See Doub v. Weathersby-Breeland Ins. Agency*, 268 S.C. 319, 233 S.E. (2d) 111 (1977) (finding that the insured had "abandon[ed] all care" when his insurance policy had been in effect for eighteen months and he had never read the policy, the court held the insurance agent was

not liable for an alleged misrepresentation that the policy "covered everything"); *Keown v. Holman,* 268 S.C. 468, 234 S.E. (2d) 868 (1977) (in an action against an insurance agent for negligent failure to renew a policy, the insured was contributorily negligent because he was aware the policy would expire soon and failed to examine the policy to ascertain the expiration date).

Affirmed in part and reversed in part.

GARDNER, J., and LITTLEJOHN, Acting Judge, concur.