620 S.E.2d 326

**Jacqueline Z. HOUCK, Richard Perrini and All Others Similarly Situated, Appellants,**

v.

**STATE FARM FIRE AND CASUALTY INSURANCE COMPA-NY, State Farm Insurance Group, John C. Mallet, Individually and in his Capacity as a Class Representative for State Farm Insurance Agents, and John Doe, Respondents.**

No. 26043.

Supreme Court of South Carolina.

Heard June 2, 2005.
Decided Sept. 26, 2005.

8 

Donald E. Jonas, of Cotty & Jonas, of Columbia, and Gregory Milam Alford, of Alford & Wilkins, P.C., of Hilton Head Island, for Appellants.

Monteith P. Todd, and Robert E. Horner, both of Sowell, Gray, Stepp & Laffitte, L.L.C., of Columbia, for Respondents.

Justice WALLER:

We certified this case from the Court of Appeals pursuant to Rule 204, SCACR. At issue is the liability of Respondent, State Farm Insurance Company, to Appellants, homeowners in Beaufort County (Homeowners), for allowing them to purchase Standard Flood Insurance Policies covering their homes, when Preferred Risk Policies were available for a lower cost. The circuit court granted summary judgment to State Farm, holding it was not liable to Homeowners. We affirm.

## FACTS

Homeowners purchased flood insurance policies from State Farm for their homes in Beaufort County (on Hilton Head Island). State Farm issued the policies pursuant to the National Flood Insurance Program (NFIP), a program established by Congress in 1968 under the National Flood Insurance Act and administered by the Federal Emergency Management Agency (FEMA). 42 U.S.C. § 4001 et. seq. In 1983, FEMA promulgated regulations to allow private insurers, called Write–Your–Own insurance companies (WYO), to provide flood insurance under the NFIP. The policies issued are called Standard Flood Insurance Policies (SFIP's), and the terms, rates and costs of such policies are established by FEMA regulations. 44 CFR § 61 *et seq.* Although WYO companies write the flood insurance policies in their own names, coverage is actually provided by the federal government, with premiums being paid into the National Flood Insurance Fund in the United States Treasury.[1]

---

1. The WYO's fees and administrative costs are first deducted. 42 U.S.C. § 4017(d).

State Farm issued SFIP policies to Homeowners through its agent John Mallet. Premiums for flood insurance policies are based upon the flood zone, coverage limits selected by the policy holder, and other risk factors specified in the NFIP manual. Under the NFIP, insureds may, if they meet certain criteria, qualify for a Preferred Risk Policy (PRP).[2] Prior to 1995, coverage limits available under a Preferred Risk Policy were less than that available under SFIP policies. However, in 1995, the federal government increased the coverage limits available under the Preferred Risk Policies from a maximum of $25,000 for contents and $100,000 for buildings, to maximums of $60,000 for contents and $250,000 for the building. This increase in available limits made the PRP's an alternative for many homeowners who were previously not interested due to the low coverage.

Subsequent to the 1995 increase in coverages available under the PRP's, State Farm began inserting brochures into its renewal premium bills, advising insureds of the increased coverage limits available, as well as reduced premiums for Preferred Risk Policies for insured in Zones B, C, and X. Insureds were advised to contact their agents for information.[3] According to the testimony of State Farm's coordinator of flood insurance, FEMA did not require the WYO's to notify insured of the increased coverage available under the Preferred Risk Policies.

Agent Mallet directly informed his clients about the availability of the Preferred Risk Policies if an insured scheduled a "family insurance check-up" or if insureds called with questions about their flood insurance coverage. Appellant, Jacqueline Houck, was notified of her eligibility for a Preferred Risk policy in 1999, after calling Mallet's office to inquire about a hurricane brochure sent by State Farm. Subsequent to speak-

---

2. These criteria include living in a flood zone designated as B, C, or X, and other eligibility requirements, based on flood history.

3. Appellant Jacqueline Houck testified that over the years she may have received some brochures about the national flood insurance programs and she'd "sort of glance at them." Similarly, the only other homeowner whose deposition testimony is in the record, Richard Perrini, testified that he did not read the brochures included in his renewal notices.

ing with Houck, Mallet increased his efforts to notify insureds in eligible zones of the availability of the PRP.[4]

In June 2001, Homeowners instituted this action contending that from 1995 to the present, State Farm owed them a duty to advise and inform them of their eligibility for a PRP, and to sell them the less expensive policy. Its failure to do so, they asserted, was negligent, and constituted a breach of its covenant of good faith, a conspiracy, and a breach of contract. State Farm moved for summary judgment, contending Homeowners had failed to demonstrate any duty owed to them, and that there was no evidence giving rise to a breach of contract claim. The circuit court agreed and granted State Farm summary judgment.

## ISSUE

Did the circuit court err in granting summary judgment to State Farm?

## SCOPE OF REVIEW

An appellate court reviews the grant of summary judgment under the same standard applied by the trial court. *George v. Fabri,* 345 S.C. 440, 548 S.E.2d 868 (2001). Summary judgment is appropriate when it is clear there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Cafe Assocs., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). The mere fact that a case involves a novel issue does not render summary judgment inappropriate. *Medical University of South Carolina v. Arnaud,* 360 S.C. 615, 602 S.E.2d 747 (2004).

To sustain an action for negligence, it is essential the plaintiff demonstrate the defendant breached a duty of care owed to the plaintiff. *Sabb v. South Carolina State Univ.,* 350 S.C. 416, 429, 567 S.E.2d 231, 237 (2002); *Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 502 S.E.2d 78 (1998). The existence of a duty owed is a question of law for

---

4. According to Mallet's deposition testimony, he had not previously directly advised insureds of the preferred policies because it appeared the brochures mailed from State Farm were working as people had been switching from the SFIP to the preferred policies.

the courts. *Doe v. Batson,* 345 S.C. 316, 323, 548 S.E.2d 854, 857 (2001); *Washington v. Lexington County Jail,* 337 S.C. 400, 523 S.E.2d 204 (Ct.App.1999). In a negligence action, if no duty exists, the defendant is entitled to judgment as a matter of law. *Simmons v. Tuomey Reg'l Med. Ctr.,* 341 S.C. 32, 39, 533 S.E.2d 312, 316 (2000). *Accord Steinke v. South Carolina Dep't of Labor, Licensing and Reg.,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999) (in a negligence action, the Court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff).

## DISCUSSION

Homeowners concede that as a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so. *See Sullivan Co. v. New Swirl, Inc.,* 313 S.C. 34, 437 S.E.2d 30 (1993); *Pitts v. Jackson Nat'l Life Ins.,* 352 S.C. 319, 574 S.E.2d 502 (Ct.App.2002); *Trotter v. State Farm,* 297 S.C. 465, 377 S.E.2d 343 (Ct.App.1988). A duty may be imposed, however, "if the agent, nevertheless, undertakes to advise the insured." *Carolina Prod. Maint., Inc. v. United States Fid. & Guar. Co.,* 310 S.C. 32, 425 S.E.2d 39, 43 (1992) (*citing Trotter,* 377 S.E.2d at 347). Absent an express undertaking to assume such a duty, a duty can be impliedly created. *Id.* In determining whether an implied duty has been created, courts consider several factors, including whether: (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on. *Id.* (*citing Trotter,* 377 S.E.2d at 347).

Essentially, Homeowners' contention is that State Farm and agent Mallet owed each and every insured who lived in a B, C, or X flood zone, and who had a SFIP policy, a duty to seek them out individually, independent of any notices from the State Farm headquarters or newsletters issued by Mallet, and advise them personally and specifically of the availability of the Preferred Risk Policies, and to change their insurance to that policy, at a lower premium. South Carolina caselaw does not support Homeowner's contention.

In *Sullivan Co. v. New Swirl, Inc.*, 313 S.C. 34, 35, 437 S.E.2d 30 (1993), this Court addressed the issue of whether an insurance agent was required to obtain insurance for his clients "on the best possible terms and at the lowest prices." There, the insured, New Swirl, refused to pay its insurance premiums when it acquired insurance coverage through a new agent at a cost lower than that provided by its agent, Sullivan. This Court held "[t]he duty of an insurance agent to procure the represented coverage does not create a duty to obtain coverage at any particular rate, absent an express promise to do so." 313 S.C. at 36, 437 S.E.2d at 30, *citing Tunison v. Tillman Ins. Agency*, 184 Ga.App. 776, 362 S.E.2d 507 (1987). We found the view advanced by Sullivan, i.e., that its agent owed a duty to secure insurance at the best possible rates "would impose an undue burden on insurance agents and brokers." *Id.*

Most recently, in *Pitts v. Jackson Nat'l Life Ins. Co.*, 352 S.C. 319, 574 S.E.2d 502 (2002), the Court of Appeals addressed class action claims of breach of fiduciary duty and constructive fraud arising from the sale of preferred and non-preferred whole life insurance policies. In *Pitts*, a corporation had purchased a life insurance policy on its president. The corporation was not advised by the insurance agent that the president would have qualified for a less expensive "preferred" policy. The plaintiffs brought suit alleging five causes of action: unfair trade practices, breach of fiduciary duty/constructive fraud, negligence, fraudulent concealment, and unjust enrichment. The plaintiffs contended they were sold the higher priced policy when, in fact, they qualified for the less expensive policy. The Court of Appeals affirmed the grant of summary judgment to the insurer, finding the plaintiffs had failed to demonstrate any fiduciary relationship, or that the agent had breached any duty to them in failing to disclose the existence of preferred policies or to perform "full underwriting in order to inform every standard policy applicant of any eligibility for a preferred policy." 352 S.C. at 337, 574 S.E.2d at 502.

Similarly, in *Trotter v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 465, 377 S.E.2d 343 (Ct.App.1987), the insured brought a claim alleging State Farm and its agent had been negligent in failing to advising him of an exclusion in his automobile

insurance policies (excluding injuries to employees which arose out of their employment), and in failing to advise him he needed workers' compensation coverage. The Court of Appeals noted the basic principles that "[g]enerally, an insurer and its agents owe no duty to advise an insured.... If the agent, nevertheless, undertakes to advise the insured, he must exercise due care in giving advice." *Citing Riddle–Duckworth, Inc. v. Sullivan,* 253 S.C. 411, 171 S.E.2d 486 (1969). The *Trotter* court went on to note that an insurer may assume a duty to advise either by (1) expressly undertaking to advise the insured; or (2) by impliedly undertaking to advise the insured. *Id.* An implied undertaking may be shown if (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.

We find no evidence of either an express or implied undertaking in this case. Accordingly, the circuit court properly held there is no genuine issue of material fact.

As to an express undertaking, Homeowners rely upon State Farm's assumption of responsibility as a WYO provider under the WYO agreement. The WYO agreement on which they rely sets forth the "Undertakings of the Company." These "undertakings" include policy administration, eligibility determinations, issuance, endorsements, cancellations, and correspondence. We see nothing in the language here which creates an express duty on the part of State Farm to sell the best policy at the best price.

Homeowners also rely on State Farm's Flood Insurance Operation Guide, the purpose of which is to provide State Farm regional offices with the background and guidance to underwrite flood policies. Pursuant to this guide, one of State Farm's responsibilities is to "Confirm eligibility (e.g., community risk, etc.) and **charge proper rates**—additional guidance is provided in the Flood Manual." (emphasis supplied). It is undisputed that all rates for flood insurance under the WYO arrangement are set by FEMA under the NFIA. Essentially, Homeowners' claim is that the responsibility to charge "prop-

er rates" equates with charging the **lowest** rates available. We have found no authority supporting this proposition, and such a ruling would be at odds with this Court's opinion in *New Swirl,* and the Court of Appeals' opinions in *Pitts* and *Trotter* that agents do not have a duty to procure insurance at the **best possible rates.** While the Operation Manual may oblige State Farm to charge **proper** rates, the rates which Homeowners were charged for the SFIP policies were proper. Simply because they were not the lowest-price available policies does not render the rates charged for them improper.

Lastly, Homeowners rely on the testimony of State Farm's coordinator of flood insurance, Jack DeCicco, as giving rise to an express undertaking and therefore creating a duty in this case to ensure they were switched from the SFIP's to PRP's. We disagree. DeCicco testified that it was the policy of State Farm to **offer** the best available coverage at the lowest rate under the WYO program, and that State Farm did take the responsibility to notify policyholders of changes in the eligibility for preferred risk insurance whenever there was **an opportunity to do so.** However, it is undisputed that State Farm did in fact insert brochures in its policyholders' renewal notices advising them of the availability of PRP's and advising them to contact their agents if they had questions about their flood insurance policy. The only Homeowner testimony in the record is to the effect that they did not pay much attention to the brochures. DeCicco's testimony that State Farm had a policy of offering the best coverage at the best rate, and that they did in fact notify policyholders of changes in eligibility for coverages simply does not give rise to an express duty to individually and specifically contact each and every customer who lived in a B, C, or X flood zone and advise them of the availability of the lower priced coverage.

As to an implied duty, Homeowners acknowledge that they must show that (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on. *Trotter, supra.*

Initially, Homeowners contend Mallet received consideration beyond mere payment of the premiums because State Farm incurs no losses for WYO flood polices as those losses are borne by the federal government. However, this is true for **any** flood insurance policy sold under the WYO, regardless of whether it is a SFIP or a Preferred Risk Policy. Accordingly, Homeowners have not demonstrated Mallet received additional compensation beyond payment of the premiums.

As to the insured making a clear request for advice, the record is simply devoid of any such evidence.

Lastly, we find no evidence of a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on. As noted previously, the only Homeowner testimony in the record is that of Houck and Perrini. Houck testified she had had no contact whatsoever with agent Mallet prior to her husband's death in 1995 and that, thereafter, the only direct contact she had with Mallet was a request to remove her deceased husband's name from their correspondence. She testified she **assumed** Mallet was her agent and would obtain the best coverage for her. Similarly, Perrini testified he did not recall ever speaking to Mallet about his insurance needs, and never spoke with anyone in Mallet's office about his flood insurance premiums. Although he periodically visited Mallet's office to pay premiums, and to have a photo taken of his classic 1967 Mustang, there is no testimony as to any specific conversations with Mallet about procuring the best flood insurance policy at the best price. It is patent that Homeowner's testimony is insufficient to establish a course of dealing. *See Trotter,* 297 S.C. at 473, 377 S.E.2d at 348 (plaintiff's "ongoing relationship" consisting of periodic visits to pay premiums, change vehicles, discuss insurance, and conduct routing business insufficient to prove a course of dealing).

We find as a matter of law that neither State Farm nor agent Mallet owed Homeowners a duty to sell them the best policy at the lowest available price. Accordingly, we find the

 

circuit court properly granted summary judgment.[5]

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ.,
concur.

---

5. As to the grant of summary judgment on Homeowners' breach of
contract claim, we find Homeowners have effectively abandoned this
argument. *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343
S.C. 424, 437, 540 S.E.2d 113, 120 (Ct.App.2000) (deeming an issue
abandoned if the appellant's brief treats it in a conclusory manner).