SHEDD, Circuit Judge,
dissenting:
I believe the majority has made several critical mistakes in its analysis. It has required the accident victim to prove an additional element not mandated by the *288 law of equitable estoppel, and it has failed to focus on the crucial information known only by the insurance company, which is the basis for this estoppel. This knowledge is not, as the majority believes, the transfer provision written into the insurance contract, but instead the fact that the company did not intend to waive that provision. The result of this flawed analysis means that the insurance company will succeed in avoiding even potential liability for the fatal accident caused by its insured,[1] and which victim the insurance company tried to silence in court. Under the circumstances, I respectfully dissent.
First Financial Insurance Co. (“First Financial”), issued an insurance policy to Gary Denaux, doing business as Wholesale Transmission (“WT”), covering the period of May 23, 2007, to May 23, 2008. WT is an auto-repair shop started by Gary De-naux, which Edward English later joined as a partner. The two ran the company together from late 2006 to late 2007. Around the end of 2007 or beginning of 2008, Denaux left the business. WT was then run by English and Gary Gorey, after Gorey bought out Denaux’s interest. WT operated in the same location, and the First Financial policy remained in place. In February of 2008, English paid the final insurance premium for the 2007-2008 policy with a check signed in his name.
In April of 2008, Lee Ann Wise, an insurance agent for WT and English, received a blank application from First Financial for insurance for WT, which she understood to be an application for the renewal of the then-existing policy. On the application, Wise asked for the renewal to be effective on May 23, 2008, the date the original coverage period was to terminate, which would ensure no lapse of coverage. As with the original application, the renewal application listed the name of the business as Wholesale Transmission, the same address for WT, the applicant’s business as a “transmission repair shop,” and the same amount of coverage. On May 2, 2008, Wise faxed the completed application to First Financial, with a cover letter that stated,
Pat — [2]
Gary Denaux is no longer the owner of this company. I made the changes on the app, I am not sure if you will need to re-quote it w/ the new owner & drivers. Please call me if you have any questions. Thank you, Lee Ann. J.A. 114 (emphasis added). First Financial never contacted Wise regarding the information in her cover letter or in the application, nor did it inform her the current policy would not cover WT if Denaux was no longer the owner. Further, First Financial did not refund any of the premium to WT after discovering Denaux was no longer involved with WT. On May 12, 2008, Ms. Wanda Holland was killed in a car accident with one of WT’s employees. Ms. Holland, through her daughter, Tonya Brum-baugh, sued WT (and others) in state court because of the accident.
The case before us represents First Financial’s attempts to avoid liability coverage for the auto accident. First Financial brought a declaratory judgment action in district court against Brumbaugh (and others) seeking a determination that it was not required to provide coverage for the accident that caused Ms. Holland’s death. After suing Brumbaugh in the declaratory *289 judgment action, First Financial then claimed she had no standing to even assert First Financial’s coverage.
The district court first denied First Financial’s attack on Brumbaugh’s standing. Then, after a bench trial, the district court estopped First Financial from denying coverage based on First Financial’s position that it had not given written consent under the policy for coverage to be transferred to WT operating without Denaux.
In arguing that we should not even hear from Brumbaugh, First Financial incorrectly relies on South Carolina case law that explains when a party may bring a direct cause of action against an insurer. Brief of Appellant at 11-12. Here, Brum-baugh did not bring a direct action against First Financial, but rather, was brought into court by First Financial. Brumbaugh clearly has standing to defend herself in this action under South Carolina law. Cases limiting direct actions are inapplicable. See, e.g., Major v. Nat’l Indem. Co., 267 S.C. 517, 229 S.E.2d 849 (1976) (distinguishing between case law allowing join-der of insurance companies by third parties versus a direct suit solely against an insurance company by a third party). South Carolina courts allow third parties to seek contract reformation of insurance contracts to which they are not a party. George v. Empire Fire & Marine Ins. Co., 336 S.C. 206, 519 S.E.2d 107, 110 (S.C.Ct.App.1999) rev’d on other grounds, 344 S.C. 582, 545 S.E.2d 500 (2001), (“Ordinarily, a party requesting reformation must have been a party to the written document or in privity with a party. However, a third-party beneficiary to an insurance contract may bring such an action.” (citations omitted)). Accordingly, Brumbaugh has standing to defend herself in this declaratory action, regardless of whether she has a direct cause of action against the insurer under South Carolina law.[3]
Next, First Financial argues that insurance coverage may not be extended by equitable estoppel. See Brief of Appellant at 22. First Financial is incorrect; South Carolina does allow insurance coverage to be extended by estoppel. See Standard Fire Co. v. Marine Contracting & Towing Co., 301 S.C. 418, 392 S.E.2d 460, 462 (1990); Pitts v. New York Life Ins. Co., 247 S.C. 545, 148 S.E.2d 369, 372 (1966) (“[EJstoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as the equities between the parties may preponderate.”).
The question here is whether the district court erred in finding that the circumstances present in this case met South *290 Carolina’s estoppel requirements. We review the district court decision under the abuse of discretion standard. The district court abused its discretion only if it made an error of law or clearly erred in its factual findings. Am. Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 629 (4th Cir. 2006).
We review factual findings by the district court under the clearly erroneous standard set forth in Federal Rule of Civil Procedure 52(a). Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir.2003); Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 n. 18 (4th Cir.1992). Our scope of review is narrow; we do not exercise de novo review of factual findings or substitute our version of the facts for that found by the district court. Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir.1995). Instead, “[i]f the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Thus, facts found by the district court are conclusive on appeal “unless they are plainly wrong.” Jiminez, 57 F.3d at 378-79.
Walton v. Johnson, 440 F.3d 160, 173 (4th Cir.2006). For the reasons discussed below, the district court made no error of law; and as the factfinder, that court clearly could find the elements of equitable estoppel had been met based on the circumstances in this case.
Although the majority correctly rejects First Financial’s erroneous view that South Carolina does not allow the extension of insurance coverage under equitable estoppel, it otherwise misreads South Carolina law. The majority conflates circumstances which allow for the application of equitable estoppel in specific cases with the requirements of the general rule. Stated another way, the cases the majority relies on do not add an additional requirement to equitable estoppel in South Carolina. Properly applying the law of equitable estoppel, we must affirm the district court.
As relevant here, the elements for equitable estoppel in South Carolina are:
As to the estopped party, ... (1) ... conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the party’s subsequent assertions; (2) intention or expectation that such conduct be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. As to the party claiming estoppel, the essential elements are: (1) lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts; (2) reasonable reliance on the other party’s conduct; and (3) a prejudicial change in position.... Es-toppel by silence arises when the es-topped party owes a duty to speak to the other party but refrains from doing so, thereby leading the other party to believe in an erroneous state of facts.
Provident Life & Acc. Ins. Co. v. Driver, 317 S.C. 471, 451 S.E.2d 924, 928 (S.C.Ct. App.1994) (citation omitted). Further, a duty to speak may arise
where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied[.]
*291 Hedgepath v. Am. Tel. & Tel. Co., 348 S.C. 340, 559 S.E.2d 327, 339 (S.C.Ct.App.2001). In the insurance context specifically,
[a] duty may be imposed ... if the agent ... undertakes to advise the insured .... [A] duty can be impliedly created. In determining whether an implied duty has been created, courts consider several factors, including whether: (1) the agent received consideration beyond a mere payment of the premium,
(2) the insured made a clear request for advice, or
(3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.
Houck v. State Farm Fire & Cas. Ins. Co., 366 S.C. 7, 620 S.E.2d 326, 329 (2005) (citations and internal quotation marks omitted).
At trial, the evidence necessary to establish each element of equitable estoppel was presented to the district court as the fact-finder.
First, there was “conduct calculated to convey the impression that the facts are otherwise than, and inconsistent with, the party’s subsequent assertions.” Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. First Financial’s conduct conveyed the impression that English was covered because by not saying anything to Wise or English, First Financial signified it was waiving the no transfer provision in the original policy.
Second, there was an “intention or expectation that such conduct be acted upon by the other party.” Id. First Financial should have expected that by not saying anything at all in response to Wise’s fax, English would believe he had continuing coverage. Further, the existence of continuing coverage could be gleaned from the fact that the new policy was to begin the exact minute the old coverage period expired. The factfinder could certainly find that English would thereby understand that he was continually covered and would decide to forego obtaining other insurance. See Moore v. Palmetto State Life Ins. Co., 222 S.C. 492, 73 S.E.2d 688, 693 (1952).
Third, First Financial had “actual or constructive knowledge of the real facts.” Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. First Financial knew or should have known that English was seeking continuing coverage and that it did not intend to waive the no transfer provision in the contract to allow for that coverage. On this point, the majority mistakenly believes the critical fact is the no transfer provision of the insurance contract, but it is not. The “real” fact is that First Financial did not waive that provision.
Fourth, the party asserting estoppel must show a “lack of knowledge or the means of acquiring, with reasonable diligence, knowledge of the true facts.” Id. Here, the majority focuses on the wrong “facts.” The majority asserts that Brum-baugh cannot establish this element because “the face of the policy makes plain that Denaux’s rights could not be transferred absent written consent from First Financial.” But again, the majority fails to realize that the critical issue is not whether English could have found the no transfer provision in reading the contract, but rather, that First Financial had no intention of waiving it.
Without question, First Financial had the authority to waive the provision requiring its written consent for a transfer. Insurance companies can waive any provision meant to protect them and can even waive provisions that define how a proper waiver is to occur. Gandy v. Orient Ins. Co., 52 S.C. 224, 29 S.E. 655, 656 (1898) (“An insurance contract, like any other contract, *292 may be altered by the contracting parties, and the insurer may, of course, waive any provision for forfeiture therein. It may also waive the provision relating to the manner or form of waiver by its agents, since this clause has no greater sanctity than any other part of the instrument.”). Thus, First Financial clearly could waive the requirement that its consent to transfer had to be in writing. Accepting, as the majority does, that Wise knew of the transfer provision, she is also charged with having knowledge of the law on waiver, and based on her course of dealing with First Financial, she thought First Financial was waiving the provision. Neither Wise nor English had any way to discover that First Financial did not intend to waive that provision because First Financial did not respond in a manner to put English on notice that there was a problem or issue pursuant to Wise’s fax.
Fifth, there was “reasonable reliance on the other party’s conduct.” Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. English, through his agent, Wise, believed that by its silence, First Financial was consenting to a transfer of the policy. Thus, Wise thought First Financial’s silence meant First Financial was providing English with continuing coverage. There is no doubt this reliance was clearly reasonable; First Financial’s representative admitted as much at trial. J.A. 180.
Sixth, there was “a prejudicial change in position.” Provident Life & Acc. Ins. Co., 451 S.E.2d at 928. Wise testified that if First Financial had notified her that there was any problem whatsoever with continuing coverage for English, she would have immediately obtained other insurance for English to prevent any lapse in coverage. Thus, English had a prejudicial change in position when he did not get other insurance for that time period.
The two additional elements for estoppel by silence are (1) the duty to speak and (2) a failure to speak that misleads the injured party. Id. They are both present here. The majority believes that “First Financial had no duty to inform English or his agent, Wise, that English lacked coverage” because English did not have an “existing contractual relationship” with First Financial. The majority apparently finds that requirement in Jost v. Equitable Life Assurance Soc’y of the U.S., 271 S.C. 492, 248 S.E.2d 778 (1978) and Pitts, 148 S.E.2d 369. There, the South Carolina Supreme Court estopped insurance companies from denying coverage because they continued to accept premiums from individuals after their insurance policies had terminated. In these cases, the court applied estoppel in a factual situation where there was an existing contractual relationship, but the court did not make such an existing relationship a requirement for equitable estop-pel. See S. Dev. Land & Golf Co., Ltd. v. S.C. Pub. Serv. Auth., 311 S.C. 29, 426 S.E.2d 748, 750 (1993) (listing the elements of equitable estoppel, but not including an existing relationship as a requirement); Provident Life & Acc. Ins. Co., 451 S.E.2d at 928 (same).
There is no requirement for an existing contractual relationship, or any type of prior relationship, for there to be a duty to speak in South Carolina. See, e.g., Moore, 73 S.E.2d at 693 (estopping an insurance company from denying coverage of an individual who had not yet formed a contract with the company, and treating the company’s failure to speak as an implied acceptance). In fact, in South Carolina, as little as a first-time phone conversation between the parties can be sufficient to create a duty to speak. See S. Dev. Land & Golf Co., Ltd., 426 S.E.2d at 750-51. For example, in Southern Development Land and Golf Co., an individual interested in purchasing property for development *293 called the power company to inquire about exposed power lines located on the property and advised the company of his need to avoid any exposed power lines. Id. The power company told the caller the current lines could be buried, but failed to tell him of its finalized plans to replace those current lines with exposed high voltage lines. Id. Because the power company knew the man needed to avoid all such exposed lines and also knew it had plans to build new exposed lines on the property, this superi- or knowledge was enough to create a duty to speak, even though there was no prior relationship between the parties before this phone call. Id.
The court found a duty to speak under the circumstances of this case.[4] That finding is justified in several ways. First, there was an implied trust and confidence based on both the circumstances of the case and the nature of the course of dealings between Wise, as English’s agent, and First Financial. See Hedgepath, 559 S.E.2d at 339.
Second, under South Carolina law, there may be a duty to speak in the insurance context if there is an implied undertaking to advise an applicant. Here, Wise’s fax could certainly be construed as a request for advice. Further, the testimony indicated “there [was] a course of dealing [between Wise and First Financial] over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice [was] being sought and relied on.” Houck, 620 S.E.2d at 329. The course of dealing between First Financial and Wise was such that whenever there was any problem with an individual’s coverage or application, First Financial would advise her of it. Here, based on their prior course of dealing, Wise was asking whether anything further needed to be done to ensure that English had continuing coverage. Under these facts, a duty to speak would arise under South Carolina law.
As for the second additional element of estoppel by silence, First Financial’s failure to speak did have the effect of misleading English. First Financial’s failure to speak had the effect of causing both Wise and English to believe English had continuing coverage. Wise testified that based on her course of dealing with First Financial, the fact First Financial did not contact her after she sent the fax signified there was no problem with English’s continuing coverage. Therefore, this element of estoppel by silence is met.
In conclusion, I do not believe the majority has correctly applied the law of equitable estoppel to the circumstances of this case. It has added a requirement that the parties have a pre-existing relationship and it has focused on the contract language rather than the insurance company’s failure to disclose it was not waiving that contract provision. The district court correctly followed South Carolina law, and the majority has not made any real argument that the district court factfinding was clearly erroneous. I believe reversing the district court is an error and such a reversal certainly creates a harsh result for the innocent victim. For these reasons, I respectfully dissent.

. As pointed out by the court below, despite equitable estoppel, First Financial can still assert it has no financial responsibility for the accident. See J.A. 313.

. Pat Dandridge was an employee of Johnson & Johnson, which is an agent of First Financial. J.A. 320.

. First Financial’s argument on standing not only contravenes South Carolina law but is contrary to the insurance principles recognized both in this Circuit and others. For example, as we previously stated in Penn Am. Ins. Co. v. Valade, 28 Fed.Appx. 253 (4th Cir.2002),
[T]he third party’s interest in defining the scope of insurance coverage is independent of the interest of the insured. When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing, independent of that of the insured, to defend itself in the declaratory judgment proceeding. Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 353 (3d Cir. 1986) (stating that injured third party ”ha[s] standing to defend the declaratory judgment action despite the absence of ... the actual insured”); Hawkeye-Sec. Ins. Co. v. Schulte, 302 F.2d 174, 177 (7th Cir.1962) ("It would be anomalous to hold here that an actual controversy exists between [an injured third party] and [an insurer] and yet deny [the injured third party] the right to participate in the controversy.”). In this regard, it -would be anomalous not to permit the injured third party an opportunity to present its case against the insurer, which initially brought the declaratory judgment action, after the insured defaulted.
Id. at 256-57 (emphasis added).

. "Plaintiff could have informed [English] that it did not consent to a transfer of rights under the Policy and that additional coverage must be purchased for the period up until May 23, 2008.” J.A. 326, n.9.