**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Donna Jensen, Appellant,

v.

Matthew B. Wiseman and Peoples Underwriters, Inc., Respondents.

Appellate Case No. 2015-002095

––––––––––

Appeal From Horry County
Diane Schafer Goodstein, Circuit Court Judge

––––––––––

Unpublished Opinion No. 2018-UP-401
Heard June 6, 2018 – Filed October 31, 2018

––––––––––

**AFFIRMED**

––––––––––

George M. Hearn, Jr., of Hearn & Hearn, PA, of Conway; and Mary Madison Brittain Langway and Thomas C. Brittain, both of The Brittain Law Firm, P.A., of Myrtle Beach; all for Appellant.

Henry Wilkins Frampton, IV and Susan Taylor Wall, both of Gordon & Rees LLP, of Charleston, for Respondents.

––––––––––

**PER CURIAM:**  In this professional negligence action, Donna Jensen argues the circuit court erred in granting summary judgment to Matthew Wiseman and People's Underwriters, Inc. (the Agency) (collectively, Respondents).  Specifically, Jensen contends the circuit court erroneously addressed whether Jensen had an insurable interest in daycare buses covered under a commercial automobile insurance policy (the Policy) because Respondents did not raise the "insurable interest" issue in their summary judgment motion.  Jensen further asserts summary judgment was improper because she submitted more than a mere scintilla of evidence demonstrating Wiseman breached a duty to adequately advise her when she procured the Policy.  We affirm.

Jensen procured the Policy from Wiseman in 2010 to cover her daycare business, the Learning Station (the Daycare).  The commercial policy at issue covered two twelve-passenger buses (the Daycare Buses).  In 2011, a parent accidentally drove her car through the cinderblock wall of the Daycare.  The impact from the collision caused a desk and bookshelf to fall, injuring Jensen while she was working at her desk.  The Daycare Buses covered under the Policy were not involved in the collision.

Jensen asserts the coverage she sought for the Daycare was "coverage for every person who went in and out of [the] building, including [her]self who was there every single day."  But, she admits she did not ask Wiseman or the Agency to provide any personal insurance, only commercial insurance for the Daycare.  It is undisputed that although Wiseman offered to provide workers compensation coverage for employees of the Daycare, Jensen declined, obtaining this coverage through another agency.  Further, Jensen's husband handled Jensen's personal insurance coverage—including her personal automobile policy— through a separate carrier.

"Generally, an insurer and its agents owe no duty to advise an insured.  If the agent, nevertheless, undertakes to advise the insured, he must exercise due care in giving advice." *Trotter v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 465, 471, 377 S.E.2d 343, 347 (Ct. App. 1988) (citation omitted).

> An insurer may assume a duty to advise an insured in one of two ways:  (1) he may expressly undertake to advise the insured; or (2) he may impliedly undertake to advise the insured.  It is the insured, however, who bears the burden of proving the undertaking.

> An implied undertaking may be shown if: (1) the agent received consideration beyond a mere payment of the premium, (2) the insured made a clear request for advice, or (3) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on.

*Id.* (citations omitted).

Jensen presented no evidence that she sought Wiseman's advice in procuring the Policy—Jensen merely stated she trusted Wiseman because he was a "professional." *See Houck v. State Farm Fire & Cas. Ins. Co.*, 366 S.C. 7, 16, 620 S.E.2d 326, 331 (2005) (holding insurance agent did not owe a duty to the insured because "the record is simply devoid of any such evidence" showing the insured made "a clear request for advice"). "A request for 'full coverage,' 'the best policy,' or similar expressions does not place an insurance agent under a duty to determine the insured's full insurance needs, to advise the insured about coverage, or to use his discretion and expertise to determine what coverage the insured should purchase." *Trotter*, 297 S.C. at 472, 377 S.E.2d at 347. Likewise, there is no evidence of an ongoing relationship between Jensen and Wiseman such that Wiseman should have been on notice that Jensen sought and relied on his advice. Wiseman first reached out to Jensen in April 2010, a little over one year before the accident, and Wiseman and Jensen communicated only briefly about the Policy.

Until the circuit court sua sponte raised the question of the existence of Jensen's "insurable interest," Jensen presented no evidence that she informed Wiseman or the Agency that the Daycare Buses were titled in both Jensen's name and the Daycare's name. Prior to procuring the Policy, the Daycare had insurance coverage through Progressive; all Progressive policies listed the Daycare as the named insured. The commercial insurance application, which Jensen signed to procure the Policy, listed the Daycare as the named insured. The application provided a space to list "additional interests" in the Daycare Buses. No such information was provided. Although the application specifically asked whether "any vehicles [were] not solely owned by and registered to the applicant," no response was given. At her deposition, Jensen initially claimed the Daycare Buses were titled in her and her husband's names. However, when Respondents asked Jensen if the Daycare Buses were titled in her name, she responded, "I'd have to look. I know my name is attached to everything, but I don't know how it's titled."

But although it may have presented an interesting academic discussion, the question of Jensen's "insurable interest" is simply not dispositive of the *Trotter* duty analysis actually raised in Respondents' summary judgment motion.[1] Jensen admitted she did not fully read the Policy when Wiseman instructed her to do so in order for her to ask questions or determine whether the coverage was sufficient. Jensen acknowledged the insurance quote was prepared for Four J's and a D, LLC, that her name was not listed as an individual insured on the (commercial) application, and that she signed the application. When asked if she reviewed the application before signing it, she stated, "Obviously not very well, because it says the Learning Center not the Learning Station." Jensen explained she only quickly reviewed the Policy when Wiseman sent it to her: "I trusted that everything he sent me was the way it was supposed to be done, so I quickly looked at it. But I didn't pay a lot of attention to it. That's why I hired a professional to do it for me."

Jensen's admissions—that she did not fully read the Policy, ask for any additional coverages after she reviewed the Policy, or otherwise seek any advice from Respondents—are fatal to her claim. *See e.g.*, *Carolina Prod. Maint., Inc. v. U.S. Fid. & Guar. Co.*, 310 S.C. 32, 38, 425 S.E.2d 39, 43 (Ct. App. 1992) (affirming circuit court's holding that insurer and its agent were not negligent, but "even if [respondents] were negligent, [the appellant] was contributorily negligent in that its president and secretary admittedly did not read the policy despite the fact that it had been in effect for over a year."); *cf. Riddle-Duckworth, Inc. v. Sullivan*, 253 S.C. 411, 416–22, 171 S.E.2d 486, 489–91 (1969) (holding insurance agent was liable for insured's damages when insured sought a liability policy covering an elevator, but insurance agent delivered "a liability policy with the representation that it provided the desired protection but which, through [insurance agent's] fault and neglect, failed to include coverage for the elevator" and then assured insured the elevator was covered after insured's employee questioned whether the elevator was covered under the policy).

Finally, Edwin Powell, Respondents' expert witness on insurance industry practices, provided by affidavit the only evidence addressing the standard of care. Powell explained that the commercial automobile policy was correctly titled in the

---

[1] This is so despite any erroneous statements the circuit court may have made as to an examination of the elements of Jensen's negligence claim. The court's written order controls. *See Cole Vision Corp. v. Hobbs*, 394 S.C. 144, 149, 714 S.E.2d 537, 540 (2011) ("It is well settled that when there is a discrepancy between an oral ruling of the court and its written order, the written order controls.").

name of the Daycare and that worker's compensation insurance would provide the coverage applicable to a workplace injury such as Jensen's.  Although the Agency offered workers compensation coverage, "Jensen was not interested in purchasing worker's compensation insurance through [the Agency]."  Finally, Powell averred that based on his forty-two years in the insurance industry and his review of the relevant documents, it was his opinion "to a reasonable degree of certainty under the standards applicable to independent insurance agents, that [Respondents] complied with the standard of care in placing insurance for the Daycare and did not breach any duty."  Jensen did not provide a contradictory opinion or other expert testimony addressing the standard of care or duty question.

As Jensen failed to present a "mere scintilla" of evidence to support her assertion that Wiseman undertook to advise her—either expressly or impliedly—or that Wiseman or the Agency otherwise had—or breached—any duty to advise her to list herself individually on the commercial Policy, the circuit court properly granted summary judgment.

The circuit court's grant of summary judgment is

**AFFIRMED.**

**HUFF, GEATHERS, and MCDONALD, JJ., concur.**